**Opinion issued December 15, 2020**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-20-00251-CV

————————————

**JUAN  LOWE, Appellant**

**V.**

**FLORA B. WATSON, Appellee**

---

**On Appeal from the 157th District Court**
**Harris County, Texas**
**Trial Court Case No. 2019-01974**

---

## MEMORANDUM OPINION

This case arises from an automobile accident between Flora Watson and Juan

Lowe, Sr. Lowe sued Watson for negligence and causing Lowe's injuries to his knee.

Watson moved for summary judgment on the affirmative defense of release, which

the trial court granted. Lowe moved for new trial and reconsideration and the trial

court denied the motion. In two issues, Lowe argues that the trial court erred by granting Watson's summary-judgment motion. We reverse and remand.

## Background

One November evening, Lowe was traveling west along I-10 in Louisiana with his wife, Tricia, and their two young children, Gabriella and Juan, Jr. Watson rear-ended Lowe's car. The accident damaged Lowe's car and injured his knee. Lowe contacted Progressive Insurance Company, Watson's insurance carrier, to file claims for his family.

About a month after the accident, Lowe and his wife signed three settlement releases on December 7, 2017. All three settlements were identical, except for the named family member and the amount. The First Release provides in part:

> This Release is given by **Juan Lowe Sr. and Tricia Lowe**, individually and as parent(s) or guardian(s) of **Gabriella Lowe** a minor (hereinafter "Releasing Party/Parties"), who for and in consideration of payment of **Two Hundred and Fifty Dollars ($250.00)**, the receipt and sufficiency of which is hereby acknowledged as well as the promise to pay reasonable and necessary medical and/or dental expenses incurred by Releasing Party/Parties for the minor's injury related treatment within 30 days following 12-07-2017, up to a maximum of Three Hundred Dollars ($300.00) . . . .

The Second Release provides in part:

> This Release is given by **Juan Lowe Sr. and Tricia Lowe**, individually and as parent(s) or guardian(s) of **Juan Lowe Jr[.]** a minor (hereinafter "Releasing Party/Parties"), who for and in consideration of payment of **Two Hundred and Fifty Dollars ($250.00)**, the receipt and sufficiency of which is hereby acknowledged as well as the promise to pay reasonable and necessary medical and/or dental expenses incurred by

2

Releasing Party/Parties for the minor's injury related treatment within 30 days following 12-07-2017, up to a maximum of Three Hundred Dollars ($300.00) . . . .

The Third Release provides in part:

This Release is given by **Juan Lowe Sr. and Tricia Lowe** (hereinafter "Releasing Party/Parties"), who for and in consideration of payment of **Five Hundred Dollars ($500.00)**, the receipt and sufficiency of which is hereby acknowledged as well as the promise to pay reasonable and necessary medical and/or dental expenses incurred by Releasing Party/Parties for injury related treatment within 30 days following 12/07/2017, up to a maximum of Three Hundred Dollars ($300.00) . . . .

Lowe and Tricia signed all three settlement releases.

Later, Progressive sent four checks payable to Lowe and Tricia.[1] The first check for $250 listed LOWE, GABRIELLA below the claim number. The second check for $250 listed "LOWE JR, JUAN." The third check for $500 listed "LOWE, TRICIA." The fourth check for $951.26 listed "LOWE SR, JUAN." Lowe and Tricia deposited the first three checks. They did not, however, deposit the fourth check. Lowe rejected the check because his medical bills for the orthopedic specialist for his knee exceeded Progressive's $951.26 settlement offer.

A dispute arose. Lowe explained that he never executed a settlement release for his own personal injuries. Instead, he only executed settlement releases on behalf

---

[1] Progressive also issued two checks directly to the body shop to cover the cost of repairs to Lowe's vehicle. The checks were made payable to Joe Meyers Collision and listed "LOWE SR, JUAN" below the claim number.

of his children and Tricia for a derivative loss-of-consortium claim. Progressive told Lowe that the Third Release released all his claims. Dissatisfied with Progressive's response, Lowe retained counsel and sued Watson for negligence in his individual capacity. Watson answered, generally denying Lowe's allegations and pleading affirmative defenses of accord and satisfaction and payment.

Watson moved for summary judgment, arguing that Lowe settled his claims with Progressive for $500, signed a settlement release, and endorsed and cashed his settlement check.[2] In sum, Watson argued that Progressive released Lowe from all claims related to the car accident because Lowe signed the Third Release and cashed the $500 check. Watson attached the Third Release and four checks as summary-judgment evidence.

In response, Lowe first argued that he signed the Third Release in his capacity as Tricia's husband to settle his derivative loss-of-consortium claims and the other two releases in his capacity as the parent and guardian of Gabriella and Juan Jr. He contended that the Third Release "was not intended to release his own separate personal injury claims in his individual capacity."

Second, Lowe argued that release contains a latent ambiguity or, in the alternative, a mutual mistake. He contended that the settlement checks contradicted

---

[2]    Although Watson's motion was titled "Defendant's Motion to Enforce Settlement and to Dismiss with Prejudice," the parties and the trial court treated this motion as a summary-judgment motion.

the plain language of the release, raising a genuine issue of material fact on whether the parties intended the Third Release to cover Lowe's separate personal injury claims in his individual capacity. Lowe asserted that extrinsic evidence was necessary to show the parties' true intent. Progressive issued multiple checks under the same claim number which were "not contemplated by the plain language of the [Third Release]" because "the one $500.00 check [Progressive] issued . . . plainly lists 'LOWE, TRICIA'" as the only claimant.

Third, Lowe argued that Watson's failure to plead release as an affirmative defense supports his contention that Lowe did not release his claims against Progressive. Lowe attached responsive evidence, including six checks, his deposition testimony, three release agreements, and the motor vehicle crash report.

The trial court granted Watson's motion for summary judgment and dismissed the case. Lowe then filed a motion for new trial and reconsideration, which the trial court denied. Lowe appealed.

## Summary Judgment

In his first issue, Lowe contends that the trial court erred in granting summary judgment because the Third Release was latently ambiguous as to what claims he intended to release as part of his settlement with Progressive. He did not intend to release his negligence claim. Instead, he only intended to settle his derivative loss-of-consortium claim as Tricia's husband. And, therefore, Lowe contends that the

5

objective circumstances surrounding the execution of the Third Release raises fact issues about the parties' true intent, and, as a result, the parties did not enter into a valid contract to release his negligence claims.

## A. Standard of review

We review the trial court's ruling on a motion for summary judgment de novo. *Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 811 (Tex. 2019). To prevail on a summary-judgment motion, a movant must prove that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Hillis v. McCall*, 602 S.W.3d 436, 439–40 (Tex. 2020). Once the movant meets this burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *See Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). The evidence raises a genuine issue of fact if "reasonable and fair-minded jurors could differ in their conclusions" given all the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam). In reviewing the grounds for summary judgment, we review the evidence in the light most favorable to the nonmovant, "crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not." *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). "[W]e indulge every reasonable inference and resolve any doubts in the

nonmovant's favor." *Helix Energy Sols. Group, Inc. v. Gold*, 522 S.W.3d 427, 431 (Tex. 2017).

## B.     Applicable law

A release is a written contract "which provides that a duty or obligation owed to one party to the release is discharged immediately or upon the occurrence of a condition." *Henry v. Masson*, 333 S.W.3d 825, 844 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *see also Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 178 (Tex. 1997) ("[A] a release is a contract"). A release of a claim "operates to extinguish the claim . . . and is an absolute bar to any right of action on the released matter." *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993).

Like any other contract, a release is subject to the rules of contract construction. *Henry*, 333 S.W.3d at 844. In construing a release, our primary task is to determine the true intentions of the parties as expressed in the language of the agreement. *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 479 (Tex. 2019). "If we determine that the contract's language can be given a certain or definite legal meaning or interpretation, then the contract is not ambiguous, and we will construe it as a matter of law." *El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 806 (Tex. 2012). If, however, the language of a release is subject to two or more reasonable interpretations, then the release is ambiguous,

raising a genuine issue of material fact on the parties' intent. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). "Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered." *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 889 (Tex. 2019). We construe categorical releases narrowly. *Gallagher Headquarters Ranch Dev., Ltd. v. City of San Antonio*, 303 S.W.3d 700, 702 (Tex. 2010).

## C. Analysis

To effectively release a claim in Texas, the release must "'mention' the claim to be released." *Victoria Bank & Tr. Co. v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991). "[A]ny claims not clearly within the subject matter of the release are not discharged." *Id*. Lowe asserts that the Third Release does not identify the claims to be released. Watson responds that the Third Release bearing Lowe's handwritten name next to a signature and date establishes that the release was "directed to [Lowe] and his claim." The Third Release provides:

> This Release is given by **Juan Lowe Sr. and Tricia Lowe** (hereinafter "Releasing Party/Parties"), who for and in consideration of payment of **Five Hundred Dollars ($500.00)**, the receipt and sufficiency of which is hereby acknowledged as well as the promise to pay reasonable and necessary medical and/or dental expenses incurred by Releasing Party/Parties for injury related treatment within 30 days following 12/07/2017, up to a maximum of Three Hundred Dollars ($300.00), do(es) hereby for himself/herself/themselves and his/her/their heirs,

8

executors, administrators, administrators, successors, and assigns, RELEASE, ACQUIT, AND FOREVER DISCHARGE **Matthew Watson and Flora Watson** (hereinafter "Released Party/Parties") and his/her/their heirs, executors, administrators, successors, assigns, agents, representatives, employers, employees, servants, and all other persons, firms, corporations, and organizations in privity with the Released Party/Parties, from any and all claims liabilities, obligations, demands or actions which the Releasing Party/Parties has/have now, or may have in the future, or for damages, costs, interest, fees or compensation of any kind on account of or in any way growing out of an accident which occurred on or about 11-26-17 at or near Houston, TX.

Although the broad language purports to release all past and future claims against Watson arising from the accident, that does not end our inquiry. Importantly, there is no express waiver of negligence or loss-of-consortium claims. *Cf., e.g.*, *Shannon v. Mem'l Drive Presbyterian Church U.S.*, 476 S.W.3d 612, 631–32 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (holding that ambiguous categorical agreement that "released all claims" did not release fraudulent-inducement claims because agreement lacked "express waiver" of those claims).

In interpreting whether a release of "any and all claims . . . arising from or related to the events and transactions" in a series of condemnation actions applied to a dispute over land use, the Texas Supreme Court found the kind of categorical language here ambiguous and remanded for factfinding about the scope of the release. *Gallagher*, 303 S.W.3d at 701–02. We find *Victoria Bank & Trust Company v. Brady*, 811 S.W.2d 931 (Tex. 1991), similarly helpful in concluding that the release language is ambiguous. The Cattle Company and Victoria Bank had engaged

9

in two separate but related transactions, one involving a $150,000 loan in which The Cattle Company was a co-obligee and one involving the extension of a line of credit. *Id*. at 933–34. The Bank conditioned the line of credit on The Cattle Company's agreement to assume its partner's preexisting debt. *Id*. When a dispute arose over the loan, the partner sued the Bank to enjoin the foreclosure of his property that secured the transaction. *Id*. at 934. The parties settled, and The Cattle Company agreed to release the Bank from "any and all claims and causes of action . . . directly or indirectly attributable to the above described loan transaction." *Id*. at 938. When The Cattle Company sued the Bank over the line of credit, the Bank argued that The Cattle Company had released it from all claims. *Id*. After reviewing the settlement agreement, the Texas Supreme Court determined that the "above described loan transaction" referred only to the initial loan. *Id*. The loan settlement did not release the bank from claims arising from the line of credit because the settlement did not mention it. *Id*. at 939.

Unlike the release in *Victoria*, the Third Release does not list a specific transaction but it does include a claim number. A court may consider the circumstances of the release to determine whether an ambiguity about the parties' intentions exists and admit extraneous evidence to make this determination. *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 765–66 (Tex. 2018). Lowe argues that the claim number at the top of the Third Release does not distinguish his negligence

10

claim from his derivative loss-of-consortium claim as Tricia's husband—or from any of the other claims he filed on behalf of Gabriella and Juan, Jr.—because the claim number on the Third Release is the same claim number appearing on the First Release and the Second Release. Thus, a latent ambiguity exists.

A latent ambiguity arises when a contract which is "unambiguous on its face is applied to the subject matter with which it deals and an ambiguity appears by reason of some collateral matter." *URI*, 543 S.W.3d at 765. If a latent ambiguity arises from this application, parol evidence is admissible to determine the true intention of the parties as expressed in the agreement.[3] *Nat'l Union Fire Ins.*, 907 S.W.2d at 520. The classic example of a latent ambiguity is a contract that calls for goods to be delivered to the "green house on Pecan Street" when there are, in fact, two or more green houses on Pecan Street. *See, e.g.,* 11 Williston on Contracts § 33.40 (4th ed.).

Lowe's responsive evidence shows that Progressive issued three separate releases under the same claim number. Progressive issued four different checks payable to Lowe and Tricia. All four checks list the same claim number that appears on the three releases. Other than the payment amounts, the only distinguishing feature on each check is the name below the claim number.

---

[3] Although this is not an issue on appeal, we note that both parties relied on extraneous evidence and neither party objected.

For example, Progressive issued a $250 check with the name of "LOWE, GABRIELLA" below the claim number. This $250 check corresponds with the First Release, which lists her name and $250 as the amount of consideration. Similarly, Progressive issued a $250 check with the name of "LOWE JR, JUAN" below the claim number. This $250 check corresponds with the Second Release, which lists his name and $250 as the amount of consideration. The check for $500, however, only identifies "LOWE, TRICIA, even though the Third Release identifies Tricia and Lowe. Finally, Progressive also issued a check for $951.26, naming "LOWE SR, JUAN" below the claim number. None of the releases in the record list this amount as consideration. Notably, the record does not show a fourth release relating to the amount of this check. Nor does the check appear to be cashed or deposited.[4] According to his deposition testimony, Lowe testified that he rejected the check that Progressive had issued to him because the cost of his orthopedic treatment exceeded the amount of the check. He further testified, "I signed a release for my wife. I did not sign a release for myself."

Viewing this evidence in the light most favorable to Lowe, the Third Release is susceptible to two reasonable interpretations: (1) a release of only Lowe's loss-of-consortium claim and (2) a release both of his claims for loss of consortium and

---

[4]    We note that the check is endorsed, but there is no information from a bank showing that it was deposited or otherwise processed by a bank, unlike the other three checks.

12

negligence. We therefore conclude that a latent ambiguity exists as to which claims Lowe intended to release or discharge. *See, e.g.*, *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 120 (Tex. 2015) ("[W]e conclude that the endorsement reasonably can be read to support either party's proposed construction and is therefore ambiguous."); *Milner v. Milner*, 361 S.W.3d 615, 619–23 (Tex. 2012) (mediated settlement agreement was ambiguous when it was unclear whether transfer of partnership was conditioned on consent of other partners); *Exxon Corp. v. W. Tex. Gathering Co.*, 868 S.W.2d 299, 302 (Tex. 1993) (natural gas purchase contract was ambiguous because take-or-pay provision was unclear about whether takes were actual or hypothetical); *Sage St. Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 445 (Tex. 1993) (construction contracts were ambiguous because both set out different prices and included provisions "purporting to override the other" contract). Because a latent ambiguity exists, we hold that the trial court erred in granting Watson's motion for summary judgment because a genuine issue of material fact exists about the parties' intent. *See Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983) ("When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue.").

We need not address Lowe's remaining arguments because we sustain his first issue. *See* TEX. R. APP. P. 47.1.[5]

## Conclusion

We reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.


Sarah Beth Landau
Justice


Panel consists of Justices Goodman, Landau, and Adams.

---

[5] We also note that Watson argues that Lowe's acceptance and negotiation of the $500 check constitutes a release of all his claims against Watson. In essence, Watson claims an affirmative defense of accord and satisfaction, which "rests upon a new contract, express or implied, in which the parties agree to the discharge of the existing obligation by means of the lesser payment tendered and accepted." *Jenkins v. Henry C. Beck Co.,* 449 S.W.2d 454, 455 (Tex. 1969). We need not determine whether accord and satisfaction applies because neither Watson nor Lowe contends that they had executed a new contract. *See id.*