**Affirmed and Memorandum Opinion filed May 3, 2022.**



In The

# Fourteenth Court of Appeals

## NO. 14-21-00006-CV

**TEXIENNE HOSPITAL SYSTEMS L.P. F/K/A APOLLO HOSPITAL SYSTEMS L.P. D/B/A APOLLO HOSPITAL, Appellant**

**V.**

**KKU SURGICAL MANAGEMENT, LLC, Appellee**

**On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Cause No. 2017-43574**

## MEMORANDUM OPINION

A staffing company sued a hospital, claiming that the hospital had breached a contract by failing to pay for services rendered. The claim was tried to the bench, and the trial court rendered a final judgment in favor of the staffing company. The hospital now raises two issues for why the judgment should be reversed: first, because the contract is illegal and unenforceable for having violated the prohibition against the corporate practice of medicine; and second, because the evidence is

legally and factually insufficient to support the trial court's findings. We overrule both issues and affirm the trial court's judgment.

## BACKGROUND

The staffing company in this case was KKU Surgical Management, LLC, and the hospital was Apollo Hospital (which subsequently became known as Texienne Hospital Systems, L.P.). In February 2016, KKU and Apollo entered into a contract in which KKU agreed to staff Apollo's emergency rooms with qualified physicians. In exchange for those staffing services, Apollo agreed to pay KKU a flat fee of $290,000 per month.

During the term of the contract, Apollo negotiated a sale of its facilities to another hospital system. That sale became effective in November 2016. The new hospital system paid KKU for the remainder of the contract term, but a balance still remained because Apollo did not pay KKU for September 2016, October 2016, or the first few days of November 2016, before the sale was completed.

KKU sued Apollo to recover the unpaid balance, which KKU alleged was $667,666.67. The case proceeded to a nonjury trial, where Apollo argued that KKU should recover nothing because KKU was illegally practicing medicine, or alternatively, because KKU's damages were offset by its own breaches, which were prior and material. The trial court rejected all of Apollo's defensive arguments. The trial court then signed findings of fact and conclusion of law in favor of KKU, and awarded KKU all of its requested relief.

## CORPORATE PRACTICE OF MEDICINE

The general rule in this state is that business entities are prohibited from practicing medicine. *See* 22 Tex. Admin. Code § 177.17(a). This rule is derived from various provisions of the Texas Occupations Code, which requires a person to have

a license to practice medicine, *see* Tex. Occ. Code § 155.001; which prohibits such persons from directly or indirectly aiding or abetting the practice of medicine by an individual or entity that is not licensed to practice medicine, *see* Tex. Occ. Code § 164.052(a)(17); and which creates criminal penalties for any individuals or entities who falsely indicate in any manner an entitlement to practice medicine, *see* Tex. Occ. Code § 165.156.

The purpose behind the rule is "to preserve the vitally important doctor-patient relationship and prevent possible abuses resulting from lay control of corporations employing licensed physicians to practice medicine." *See Flynn Bros., Inc. v. First Med. Assocs.*, 715 S.W.2d 782, 785 (Tex. App.—Dallas 1986, writ ref'd n.r.e.).

There are exceptions to the rule though, and one such exception is that a professional association may provide a professional service—such as the practice of medicine—so long as its owners and employees are duly licensed to provide that service. *See* Tex. Bus. Org. Code § 301.006(a). But not every business entity is a "professional association." To qualify for that status, the association must have been formed for the purpose of providing a professional service, and the association must be governed as a "professional entity." *See* Tex. Bus. Org. Code § 301.003(2). And a "professional entity" is defined as a "professional association, professional corporation, or professional limited liability company." *See* Tex. Bus. Org. Code § 301.003(4).

KKU was formed by a duly licensed physician, but KKU was organized as an ordinary limited liability company, not as a professional limited liability company. Because KKU lacked the "professional" designation, Apollo argued to the trial court that KKU could not legally practice medicine. Continuing with that reasoning, Apollo argued that its contract with KKU could not be enforced because the contract required KKU to practice medicine, and a court may not enforce a contract that

requires the performance of an illegal act. *See Phillips v. Phillips*, 820 S.W.2d 785, 789 (Tex. 1991) ("Courts will not enforce a plainly illegal contract even if the parties do not object.").

The trial court rejected Apollo's argument and made the following conclusion of law:

> The Agreement is not void nor unenforceable nor is it subject to the provisions contained in Tex. Occ. Code Ann. §§ 155.001, 155.003, 157.001, 164.052(8) nor 165.156 because at all relevant times, KKU Surgical was owned and operated by Nhue Ho, MD, a physician licensed to practice medicine in the State of Texas. KKU Surgical is not a corporation and KKU Surgical did not maintain the necessary control over the physicians it placed at Apollo Hospital.

Apollo now challenges this conclusion.

We review a trial court's legal conclusions de novo, but we defer to the trial court's findings of fact if they are supported by legally sufficient evidence. *See Bos v. Smith*, 556 S.W.3d 293, 299 (Tex. 2018).

The trial court based its conclusion largely on the professional status of KKU's owner, but that status was not the critical issue, as there was no dispute among the parties that KKU was owned by a duly licensed physician. Instead, the critical issue was whether the contract required KKU to practice medicine. The trial court did not expressly address that issue in its findings of fact and conclusions of law, but through its ruling, the trial court implicitly found that the contract did not require KKU to practice medicine. If that implied finding was supported by the evidence, then KKU would not be barred from enforcing the contract on the basis that it was organized as an ordinary limited liability company. For the following reasons, we conclude that the trial court's implied finding was supported by the evidence.

4

The plain language of the contract required KKU to "provide physician coverage for [Apollo's] Emergency Department." Nowhere in the contract was there any provision requiring KKU to diagnose or treat any patients, which is how the practice of medicine is defined. *See* Tex. Occ. Code § 151.002(a)(13) ("'Practicing medicine' means the diagnosis, treatment, or offer to treat a mental or physical disease or disorder or a physical deformity or injury by any system or method, or the attempt to effect cures of those conditions . . . ."). Even though KKU staffed Apollo with physicians who engaged in the practice of medicine, KKU did not also engage in the practice of medicine simply through its provision of that staffing service. *See Doctors Hosp. at Renaissance, Ltd. v. Andrade*, 493 S.W.3d 545, 549 (Tex. 2016) ("Renaissance, as the operator of a hospital, may be in the business of providing facilities, support staff, and supplies to assist doctors in the provision of medical care, without engaging in the illegal practice of medicine by a business entity.").

Apollo counters that KKU practiced medicine because "not only did [KKU] recruit, hire and fire physicians but it also trained and supervised them." Through this argument, Apollo seems to invoke the authority that an entity practices medicine if the entity exercises so much control over the physician that the relationship between the entity and the physician resembles the relationship between an employer and an employee. *See McCoy v. FemPartners, Inc.*, 484 S.W.3d 201, 206–08 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (contrasting cases where entities were deemed to have been illegally practicing medicine because the physician was treated as an employee, with other cases where entities were not deemed to have been illegally practicing medicine because the physician was treated as an independent contractor).

The trial court found that KKU "did not maintain the necessary control over the physicians it placed at Apollo Hospital." Nonetheless, Apollo suggests that KKU

5

exerted control over the physicians it recruited because the contract required KKU to "provide a Medical Director of Emergency Services for the Emergency Department." But Apollo has not cited to any evidence that KKU actually provided a medical director. Even if KKU had provided a medical director, Apollo has not cited to any evidence that KKU used the medical director (or any other individual) to control the manner in which its physicians diagnosed and treated patients. Absent such evidence, Apollo has not shown that KKU was practicing medicine. *See Fite v. Emtel, Inc.*, No. 01-07-00273-CV, 2008 WL 4427676, at *7 (Tex. App.—Houston [1st Dist.] Oct. 2, 2008, pet. denied) (mem. op.) (holding that the appointment of a receiver did not violate the prohibition against the corporate practice of medicine because the receiver was only authorized to take control of the business operations of an association, and the receiver had no such authority to take any steps involving the dispensing of medical services).

KKU's owner testified that all of its recruited physicians were independent contractors. The trial court credited that testimony when it found that "at all pertinent times, KKU Surgical would locate physicians to work as independent contractors." Deferring to this finding as we must because it is supported by the record, we conclude that the trial court did not err when it implicitly found that KKU was not practicing medicine. *See Gupta v. E. Idaho Tumor Inst., Inc.*, 140 S.W.3d 747, 756 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (holding that an entity did not exert control over a physician where "the parties' relationship is more that of an independent contractor and not that of an employer/employee"). We likewise conclude that the trial court did not err when it determined that the contract between KKU and Apollo was valid and enforceable.

## SUFFICIENCY OF THE EVIDENCE

In its next issue, Apollo argues that the evidence is legally and factually insufficient to support the trial court's judgment that Apollo breached its contract.

As the claimant below, KKU had the burden of proving that Apollo breached the contract, which means that KKU was required to produce sufficient evidence of the following four essential elements: (1) a valid contract exists, (2) KKU performed or tendered performance as contractually required, (3) Apollo breached the contract by failing to perform or tender performance as contractually required, and (4) KKU sustained damages due to the breach. *See Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019).

When deciding whether the evidence is legally sufficient to support these elements, we review the entire record in the light most favorable to the challenged finding, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). The evidence is sufficient to support a finding if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id.* at 822. The evidence is insufficient to support a finding only if (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *Id.* at 810.

The evidence produced by KKU included the contract itself, which was a valid agreement, as we explained in the previous section of this opinion. The contract obligated KKU to provide constant coverage—i.e., a physician had to be present in Apollo's emergency rooms twenty-four hours per day, seven days per week. In

exchange for this coverage, Apollo was obligated to pay KKU $290,000 per month, regardless of the number of patients that the physicians actually treated. KKU's owner testified that KKU provided the constant coverage as the contract required, but that Apollo had not paid the monthly fee for two months and for a portion of a third month. The owner testified that KKU's total damages, which were prorated for the third month, amounted to $667,666.67. That was the same amount that the trial court awarded in its final judgment. Based on the record as a whole, we conclude that the trial court's judgment was supported by legally sufficient evidence.

When a party challenges the factual sufficiency of a finding for which the party did not bear the burden of proof at trial, we review all of the evidence in a neutral light and will reverse only if the evidence is so contrary to the overwhelming weight of the evidence as to make the judgment clearly wrong and manifestly unjust. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). Under this standard, we may not pass upon the credibility of witnesses or substitute our judgment for that of the factfinder, even if the evidence would clearly support a different result. *Id.* at 407.

Apollo has not clearly explained how the evidence is factually insufficient to support the trial court's judgment. As the appealing party in a factual sufficiency challenge, Apollo had the burden of performing a comparative analysis that weighed the pieces of evidence in favor of the trial court's judgment against the countervailing evidence. *See Lion Copolymer Holdings, LLC v. Lion Polymers, LLC*, 614 S.W.3d 729, 733 (Tex. 2020) (per curiam). Apollo did not perform this analysis or point to any evidence showing that it had not breached the contract. Instead, Apollo appears to have raised a slightly different issue by arguing that its own breach was excused because KKU committed prior material breaches.

8

A prior material breach is an affirmative defense, which Apollo had the burden of proving. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 314 (Tex. 2006). The trial court rejected Apollo's affirmative defense when it determined that "KKU Surgical's claims are not barred, in whole or in part, by any defense asserted by the defendants." If we construe Apollo's appellate argument as a challenge to the factual sufficiency of this adverse finding, then Apollo had the burden of demonstrating on appeal that the adverse finding is against the great weight and preponderance of the evidence. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam).

Apollo begins by pointing to evidence that KKU did not provide hospitalist services, as the contract had required. A hospitalist is similar to an emergency room physician, but a hospitalist primarily treats patients after they have been admitted into the hospital, and the hospitalist prepares those patients for their discharge to their primary care physicians. The contract included several provisions regarding hospitalists, including this one: "In addition, such physician coverage for the Emergency Department will include the provisions of hospitalist services for inpatient and outpatient as needed."

Before the contract was fully executed, KKU asked to remove this provision and others like it because KKU only intended to provide emergency physicians. Apollo responded by requesting KKU to simply sign the contract without any more changes. KKU signed the contract as requested, and there is no dispute among the parties that KKU did not provide Apollo with a hospitalist. Nevertheless, Apollo has not shown that KKU's failure to provide a hospitalist was a prior material breach. The contract only required KKU to provide hospitalist services "as needed," and the trial court found that "Apollo Hospital never requested KKU Surgical to provide hospitalist services." The trial court's finding is fully supported by the record.

9

KKU's owner directly testified that Apollo never requested a hospitalist, and there was other testimony that Apollo had no need for KKU to provide a hospitalist because Apollo's inpatient facility was very small, with only five beds, and because a separate association had already staffed Apollo with a hospitalist. Apollo has not cited to any contrary evidence showing that it had requested a hospitalist and that KKU failed to perform.

In a separate complaint, Apollo refers to evidence that one of KKU's physicians left the premises for two hours, which meant that the emergency room was not staffed as contractually required. When KKU learned of this gap in coverage, KKU terminated its relationship with the errant physician. Apollo still suggests that the breach was material, but the trial court found otherwise. The trial court explained that the breach was not material "because the alleged incident of the emergency room being left unattended by a physician was for a short time and defendants did not incur any damages as a result." That finding is supported by the record because the evidence established that no patients arrived at the emergency room during the brief period of the physician's absence. Apollo has not cited any evidence to the contrary.

Apollo claims next that KKU committed a prior material breach because some of the physicians it recruited were deficient in various respects. Apollo claims that one physician engaged in sexual harassment, that some physicians did not know how to use a computer or perform sutures, and that others "did not meet the requirements of the contract." Apollo has not supported these claims with any citations to the record, which was its burden on appeal. *See* Tex. R. App. P. 38.1(i). But even if we accepted Apollo's claims as true, Apollo has still not identified any specific provisions in the contract that KKU breached.

10

Moreover, even if we assumed that KKU was in breach, the trial court found that "KKU Surgical took steps and did remedy these incidents." The trial court also found that Apollo had a contractual right to terminate the contract—with or without cause—and that Apollo never exercised that right, which further demonstrated that any breach by KKU was not material. Apollo has not pointed to any evidence that countervails these findings. Absent any countervailing evidence, we conclude that Apollo has not demonstrated that the trial court's adverse finding is against the great weight and preponderance of the evidence.

Apollo finally asserts that the trial court made findings in favor of KKU on claims for promissory estoppel, quantum meruit, and fraud, and that the evidence is legally and factually insufficient to support the trial court's judgment as to those claims. We need not consider these arguments because the trial court's judgment is fully supported by its finding that Apollo breached its contract with KKU. *See* Tex. R. App. P. 47.1.

## CONCLUSION

The trial court's judgment is affirmed.

/s/　　Tracy Christopher
　　　　Chief Justice

Panel consists of Chief Justice Christopher and Justices Bourliot and Spain.

11