# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-20-00568-CV

---

### D. Alan Meeker, Appellant

### v.

### Luminex Corporation, Appellee

---

### FROM THE 126TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-19-007331, THE HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

D. Alan Meeker challenges a judgment against him on Luminex Corporation's suit for breach of a personal guarantee. Meeker argues in three issues that the district court erred by denying his motion to transfer venue, by granting summary judgment to Luminex, and by awarding Luminex attorney's fees incurred in litigation against the primary debtor. We will affirm.

### BACKGROUND

Luminex is a biotechnology company headquartered in Austin. In March of 2018, Luminex sued its customer, Total Diagnostix Labs, LLC (TDL), for return of equipment and proprietary information provided by Luminex and to recover $4,251,398 allegedly due under various agreements. Meeker is TDL's chief executive officer and resides in Tarrant County.

Two days after Luminex filed suit, TDL filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Luminex duly filed a proof of claim for the disputed amount in the bankruptcy proceeding. Later that year, Luminex reached a settlement agreement with TDL (Original Settlement). Another of Meeker's companies, CQuentia Series Holdings, LLC (CSH), was also party to the agreement. CSH agreed to pay Luminex $1.3 million, and Luminex agreed to withdraw its proof of claim and dismiss the state court lawsuit. The bankruptcy court approved the settlement in January of 2019.

CSH's payment was due on March 6, 2019. Shortly before the deadline, CSH's general counsel Ross Eichberg informed Luminex's general counsel, Richard Rew, that CSH did not have the funds necessary to timely pay the amounts due and requested an extension.[1] Luminex and CSH then executed a "Supplement to Settlement Agreement" (Supplement) amending the payment schedule for the remaining debt—termed the Settlement Amount—which was then $1.3 million. CSH agreed to pay $100,000 within one business day and the remainder of the Settlement Amount ninety days following the Supplement's effective date or three business days "following the closing of a line of credit presently being negotiated by [CSH]," whichever was earlier. In exchange for the additional time, CSH agreed to pay interest on the unpaid amount and provide Luminex with an agreed final judgment as assurance if it failed to pay.

CSH timely paid the $100,000 but then informed Luminex that it could not pay the remainder. Rew and Eichberg negotiated a modification of the Supplement (Amendment) that called for CSH to pay $100,000 within three business days and the remainder of the

---

[1] We take our description of the ensuing events from Rew's affidavit, which Luminex attached to its response to Meeker's motion to transfer venue.

2

Settlement Amount "on the first to occur of (i) ninety (90) days following the Effective Date, and (ii) the date three (3) business days following the closing of a line of credit presently being negotiated by [CSH]." The Amendment included a provision whereby Meeker "agree[d] to be liable for payment of any remaining unpaid balance of the Settlement Amount by June 8, 2019." Rew emailed the Amendment to Meeker in Tarrant County, who signed it there.

CSH timely paid Luminex another $100,000. Because CSH never closed on a line of credit, the remaining balance was due ninety days later, on June 26, 2019. That day passed without payment from CSH, and Luminex demanded that Meeker pay the entire remaining amount. Meeker did not respond, and Luminex sued CSH and Meeker in Travis County to recover the unpaid balance. CSH and Meeker removed the case to bankruptcy court, but it was later remanded back to state court. Luminex then nonsuited its claims against Meeker and sought entry of an agreed judgment against CSH. A Travis County district court entered the agreed judgment over CSH's objections.

The following month, Luminex filed the underlying suit asserting that Meeker breached the guarantee. Meeker answered and filed a motion to transfer venue to Tarrant County. Luminex filed an amended petition and a separate response to the motion. The parties then filed cross-motions for traditional summary judgment with attached evidence. By separate orders, the district court denied Meeker's motion to transfer venue, granted Luminex's motion for summary judgment, and denied Meeker's cross-motion. Luminex asked the district court to award Luminex $130,000 in attorney's fees incurred in both suits or, alternatively, award it $107,400, representing the fees incurred in pursuing its claim against Meeker. The district court subsequently rendered a final judgment ordering Meeker to pay Luminex the entire remaining balance of CSH's debt plus interest and $107,400 in attorney's fees. This appeal ensued.

3

## ANALYSIS

Meeker argues in three issues that the district court erred by denying his motion to transfer the case to Tarrant County, denying his motion for summary judgment and granting Luminex's, and awarding Luminex attorneys' fees incurred in litigation against a nonparty.

**Venue was Proper in Travis County**

We first address Meeker's argument that the district court erred by denying his motion to transfer venue to Tarrant County.

Venue may be proper in multiple counties under mandatory or general venue rules, and the "plaintiff makes the first choice of venue by filing the lawsuit." *Perryman v. Spartan Tex. Six Cap. Partners, Ltd.*, 546 S.W.3d 110, 130 (Tex. 2018). "When the plaintiff files in a 'proper' venue, 'that choice of venue should be honored absent a mandatory venue statute that requires transfer.'" *Id.* (quoting *In re Omni Hotels Mgmt. Corp.*, 159 S.W.3d 627, 629 (Tex. 2005) (orig. proceeding)). The defendant may challenge venue through a motion to transfer, which requires the plaintiff to establish that venue is proper in the county of suit. *In re Fox River Real Estate Holdings, Inc.*, 596 S.W.3d 759, 762 (Tex. 2020) (orig. proceeding); *see also* Tex. R. Civ. P. 86 (requisites of motion), 87 (determination of motion).

"All venue facts, when properly pleaded, shall be taken as true unless specifically denied by the adverse party." Tex. R. Civ. P. 87(3)(a). If a defendant objects to these facts, the plaintiff must present prima facie proof that venue is maintainable in the county of suit. *Id.* R. 87(2)(a); *In re Travelers Prop. Cas. Co. of Am.*, 485 S.W.3d 921, 924 (Tex. App.—Dallas 2016, orig. proceeding) (citing *GeoChem Tech Corp. v. Verseckes*, 962 S.W.2d 541, 543 (Tex. 1998)). A trial court rules on a motion to transfer based on the pleadings and affidavits filed by

the parties. Tex. R. Civ. P. 87(3)(a). A plaintiff satisfies its burden of presenting prima facie proof "when the venue facts are properly pleaded and an affidavit, and any duly proved attachments to the affidavit, are filed fully and specifically setting forth the facts supporting such pleading." *Id.* The plaintiff's prima facie proof of venue "is not subject to rebuttal, cross-examination, impeachment, or disproof[.]" *Pellegrini v. Six Pines Expl., LLC*, No. 03-18-00774-CV, 2019 WL 6223348, at *2 (Tex. App.—Austin Nov. 22, 2019, no pet.) (mem. op.) (citing *Chiriboga v. State Farm Mut. Auto. Ins.*, 96 S.W.3d 673, 678 (Tex. App.— Austin 2003, no pet.)); *accord Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 757 (Tex. 1993).

In reviewing a venue determination, we "consider the entire record, including the trial on the merits." Tex. Civ. Prac. & Rem. Code § 15.064(b). We conduct an independent review of the record to determine whether there is any probative evidence to support the trial court's decision. *Wilson v. Texas Parks & Wildlife Dep't*, 886 S.W.2d 259, 261–62 (Tex. 1994). "If there is any probative evidence supporting venue in the county where judgment was rendered, the judgment must be affirmed." *Chiriboga*, 96 S.W.3d at 678; *accord Wilson*, 886 S.W.2d at 261; *Ruiz*, 868 S.W.2d at 757.

Luminex pled that venue is proper in Travis County under the general venue provisions in Section 15.002. That statute provides, in relevant part, that "all lawsuits shall be brought . . . in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred[.]" Tex. Civ. Prac. & Rem. Code § 15.002(a)(1). In making venue determinations in cases involving breach of contract, Texas courts consider "where the contract was made, performed, and breached." *In re Red Dot Bldg. Sys., Inc.*, 504 S.W.3d 320, 323 (Tex. 2016) (orig. proceeding) (per curiam); *see also Siemens Corp. v. Bartek,* No. 03-04-00613-CV, 2006 WL 1126219, at *5 (Tex. App.—Austin Apr. 28, 2006, no pet.) (mem. op.). Luminex pled

5

that venue is proper in Travis County because: (1) Eichberg asked to modify the terms of the Original Settlement during a meeting with Rew in Travis County; (2) the Supplement was "negotiated and finalized" in Travis County; (3) Eichberg called Rew in Travis County to inform him that CSH could not meet its payment obligations under the Supplement; and (4) Rew and Eichberg negotiated the terms of the Amendment via telephone calls or emails sent to or from Travis County. Luminex also filed a response to the motion to transfer and attached an affidavit from Rew describing the events surrounding the negotiation and execution of the Supplement and the Amendment.

Meeker asserts that these facts do not prove that Travis County venue is proper because Luminex alleges that he breached the guarantee. He argues that we must look to the formation, performance, or breach of that provision, not the other provisions of the Amendment or the Supplement. Thus, he argues, the negotiations between Rew and Eichberg are not relevant because he was not involved in his personal capacity. But even if he is correct that the negotiations surrounding the execution of the Supplement are not relevant to venue, we cannot consider the guarantee in isolation from the Amendment. *See Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 889 (Tex. 2019) ("Contract terms cannot be viewed in isolation, however, because doing so distorts meaning."). According to Luminex's allegations—which are not subject to rebuttal, *see Pellegrini*, 2019 WL 6223348, at *2—Rew's proposal that the Amendment include a personal guarantee from Meeker was a vital part of the negotiations that led to the execution of the Amendment. Moreover, Meeker signed the Amendment in his capacity as "Manager" of CSH and in his personal capacity at the same time. Because the guarantee is inextricable from the Amendment, we consider all facts related to the

6

formation, performance, or breach of the Amendment as "events or omissions" giving rise to Luminex's claim.  *See* Tex. Civ. Prac. & Rem. Code § 15.002(a)(1).

It is undisputed that events material to venue took place in Travis County as follows:  Eichberg contacted Rew in Travis County to request modification of the payment schedule laid out in the Supplement, and Rew negotiated Amendment's terms from Travis County.  Meeker argues that this "can hardly be deemed a substantial portion" of the events leading to Luminex's claim because the Amendment was formed when Meeker signed it in Tarrant County.  *See Rotex Mfg. Co. v. Little Dude Trailer Co.*, 416 S.W.2d 511, 512 (Tex. App.—Fort Worth 1967, no writ) ("It has generally been held that a contract is made at the place where the offer of the contracting party is accepted by the other party.").  Although signing the Amendment is arguably a "substantial part" of the events leading to the claim, "venue may be proper in more than one county because a substantial part of the events or omissions giving rise to a claim may occur in more than one county."  *Unauthorized Practice of Law Comm'n. v. Nationwide Mut. Ins.*, 155 S.W.3d 590, 597 (Tex. App.—San Antonio 2004, pet. denied); *see also Fox River Real Estate Holdings*, 596 S.W.3d at 762 (explaining that "venue may be proper in many different locales").  Rew's receipt of telephone calls and emails directed to him in Travis County to negotiate the Amendment is prima facie evidence that venue is proper in Travis County.  *See Siemens Corp.*, 2006 WL 1126219, at *7 ("Texas courts have stated that the receipt of telephone calls and letters in a particular county weighs in favor of a finding that venue is appropriate in that county."); *KW Constr. v. Stephens & Sons Concrete Contractors, Inc.*, 165 S.W.3d 874, 882 (Tex. App.—Texarkana 2005, pet. denied) (finding venue proper in county where one payment and two phone calls were directed); *Massey v. Columbus State Bank*, 35 S.W.3d 697, 700 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) (noting venue was

7

proper in county where bank received "threatening and harassing phone calls and letters" that gave rise to cause of action). Having decided that there is probative evidence supporting the district court's determination that venue is proper in Travis County, we overrule Meeker's first issue.

**Summary Judgment**

Next, Meeker argues that the district court erred by granting Luminex's motion for summary judgment on Luminex's claim that he breached the guarantee and denying Meeker's cross-motion.

We review an order granting summary judgment de novo, taking as true all evidence favorable to the nonmovant and indulging every reasonable inference in the nonmovant's favor. *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021). A party moving for traditional summary judgment has the burden to show that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *JLB Builders*, 622 S.W.3d at 864. When both parties move for summary judgment on the same issue, "we consider the evidence presented by both parties and determine all questions presented." *Bush v. Lone Oak Club, LLC*, 601 S.W.3d 639, 647 (Tex. 2020).

The construction of a contract also presents a question of law we review de novo. *Sundown Energy LP v. HJSA No. 3, Ltd. P'ship*, 622 S.W.3d 884, 888 (Tex. 2021) (per curiam). Our primary concern when construing a contract "is to give effect to the written expression of the parties' intent." *Id.* To discern that intent, we interpret contract language "according to its 'plain, ordinary, and generally accepted meaning' unless the instrument directs otherwise." *Pathfinder Oil & Gas*, 574 S.W.3d at 888 (quoting *URI, Inc. v. Kleberg County*, 543 S.W.3d 755,

8

764 (Tex. 2018)). We do not construe that language in isolation but rather "consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Id.* at 889. A contract that "can be given a certain or definite legal meaning or interpretation is not ambiguous" and will be construed as a matter of law. *Id.*

A claim for breach of contract requires proof of four elements: (1) a valid contract between the parties, (2) performance by the plaintiff, (3) breach by the defendant, and (4) the plaintiff suffered damages because of the breach. *S&S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018). The parties join issue over whether Meeker breached the guarantee.

The guarantee provides:

> By signing below, Alan Meeker ("Guarantor") guarantees payment of the Settlement Amount ("Guarantee"). *Guarantor hereby agrees to be liable for payment of any remaining unpaid balance of the Settlement Amount by June 8, 2019.* Failure to pay such amounts shall entitle Luminex to pursue recovery of said unpaid amounts plus costs and attorneys' fees against the Guarantor personally. The foregoing Guarantee does not waive or limit Luminex's right to seek all available remedies under the Settlement Agreement and/or the Supplemental Settlement Agreement.

(Emphasis added). Meeker argues that the guarantee applies only to the portions of the debt that CSH was required to pay Luminex on or before June 8, 2019, which was $100,000. Meeker asks us to apply the rule that guarantee contracts are "strictly construed and may not be extended beyond its precise terms by construction or implication." *See Reece v. First State Bank of Denton*, 566 S.W.2d 296, 297 (Tex. 1978). Luminex responds that the guarantee unambiguously requires Meeker to pay the entire outstanding debt by June 8, 2019, and that we must enforce the guarantee as written. We agree with Luminex.

9

The first sentence of the guarantee states that Meeker "guarantees payment of the Settlement Amount." The Amendment does not define that phrase "Settlement Amount," but it does incorporate the terms of the Supplement. That contract defines the Settlement Amount as CSH's entire debt—$1.3 million plus interest. Construing the two instruments together, "Settlement Amount" unambiguously refers to CSH's entire outstanding debt. The plain language of the guarantee requires Meeker to pay "any remaining unpaid balance" of that sum "by June 8, 2019." It says nothing about payment of smaller parts of the Settlement Amount, and we cannot rewrite the clause under the guise of construing it. *See Pathfinder Oil & Gas*, 574 S.W.3d at 888 ("A contract's plain language controls, not what one side or the other alleges they intended to say but did not." (citing *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017)).

Meeker responds that construing the guarantee to make him liable before CSH defaults is irrational and conflicts with the guarantee's purpose. *See Frost Nat. Bank v. L&F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) ("We construe contracts from a utilitarian standpoint bearing in mind the particular business activity sought to be served and will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive."). A guarantee is a promise "to pay a debt on behalf of a principal in the event that the principal defaults on the original obligation," so the guarantor is therefore usually liable when the debtor defaults. *Chahadeh v. Jacinto Med. Group, P.A.*, 519 S.W.3d 242, 246–27 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *see also First Union Nat'l Bank v. Richmont Cap. Partners I, L.P.*, 168 S.W.3d 917, 924 (Tex. App.—Dallas 2005, no pet.) ("Because a guaranty is ancillary to the underlying contract, a dispute as to the rights and obligations of the guarantor can only be resolved by a factual determination of the rights and obligations of the parties to the underlying

10

contract."). The guarantee here deviates from this framework by making Meeker liable before CSH's payment deadline expires, but that does not make the provision irrational. The Amendment recites that the parties executed it to afford CSH additional time to pay the Settlement Amount, and Meeker's personal guarantee is provided in exchange for that extension. Requiring Meeker to pay the entire amount before CSH's deadline provided Luminex additional assurance that it would recover something on the debt that CSH had already twice failed to timely pay.

The guarantee unambiguously requires Meeker to pay the entire unpaid balance by June 8, 2019, and we must therefore presume that is what the parties intended.[2] *See URI*, 543 S.W.3d at 764 (stating that courts "presume parties intend what the words of their contract say"). Meeker failed to pay Luminex before that date; therefore, we hold that Luminex conclusively established that Meeker breached the agreement. We overrule Meeker's second issue.

**Attorney's Fees**

Meeker challenges the award of $107,400 in attorney's fees in his final issue. Specifically, Meeker argues that the guarantee does not authorize requiring Meeker to pay attorney's fees incurred in the suit against CSH and that Luminex failed to demonstrate that its fees are reasonable and necessary.

---

[2] Meeker argues in the alternative that summary judgment is inappropriate because the contract is ambiguous. *See Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983) ("When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue."). We reject this argument because we have concluded that the guaranty is unambiguous. *See URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 763 (Tex. 2018) ("A contract is not ambiguous merely because the parties disagree about its meaning.").

11

"Texas follows the American rule on attorney's fees, which provides that, generally, a party may not recover attorney's fees unless authorized by statute or contract." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 484 (Tex. 2019) (citing *In re National Lloyds Ins.*, 532 S.W.3d 794, 809 (Tex. 2017) (orig. proceeding)). Any award of fees is "limited by the wording of the statute or contract." *JCB, Inc. v. Horsburgh & Scott Co.*, 597 S.W.3d 481, 491 (Tex. 2019). We review the availability of fees under a statute or contract de novo as a question of law. *WWW.URBAN.INC. v. Drummond*, 508 S.W.3d 657, 665 n.3 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

The guarantee provides that failure to pay the unpaid balance by the deadline "shall entitle Luminex to pursue recovery of said unpaid amounts plus costs and attorneys' fees against the Guarantor personally." Meeker argues that this plainly allows an award of fees for recovering against him alone, not for suing CSH. We agree that the plain language of the guarantee allows an award of fees only for collecting against Meeker. *See JCB*, 597 S.W.3d at 491. Consequently, Luminex had to segregate the fees incurred solely in pursuing its claim against CSH. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006) ("[F]ee claimants have always been required to segregate fees between claims for which they are recoverable and claims for which they are not."). However, an exception exists "when the fees are based on claims arising out of the same transaction that are so intertwined and inseparable as to make segregation impossible." *Kinsel v. Lindsey*, 526 S.W.3d 411, 427 (Tex. 2017). Luminex argues that it only requested fees attributable to its claim against Meeker and that some of those fees were inextricably intertwined with its claim against CSH. Meeker does not argue that any of the fees awarded by the court were solely attributable to Luminex's claim against CSH.[3]

---

[3] Meeker responds that the fee statements attached to Luminex's application showed that it sought "more than $10,000 for appellate work" performed "against [CSH]." Those fees were

12

Next, Meeker argues that Luminex failed to establish the fees are reasonable and necessary. We review an award of attorney's fees for an abuse of discretion. *See Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016). "It is an abuse of discretion for a trial court to rule arbitrarily, unreasonably, or without regard to guiding legal principles, or to rule without supporting evidence." *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998) (internal citations omitted).

Meeker argues that fees are reasonable and necessary only if incurred in litigation leading to the judgment where the claimant prevailed. He argues that the supreme court has held this repeatedly by saying that a predicate for any fee award is that claimant "show that [attorney's] fees were incurred while suing the defendant sought to be charged with the fees on a claim which allows recovery of such fees." *Tony Gullo Motors*, 212 S.W.3d at 311. But this only means that a fee claimant must show that it incurred fees with respect to a claim for which fees are recoverable. *See id.* Nothing in *Tony Gullo Motors* precludes an award of fees incurred in related litigation against the same defendant if allowed by statute or contract, *see id.*, and he cites no other authority in support of this argument. Nor does the guarantee restrict a fee award in this manner. It provides that the guarantor's failure to pay the balance of the Settlement Amount entitles Luminex "to pursue recovery of said unpaid amounts plus costs and attorneys' fees against the Guarantor personally," which is what Luminex did in both lawsuits. We reject Meeker's argument that Luminex failed to establish that its fees are reasonable and necessary.

We overrule Meeker's final issue.

**CONCLUSION**

We affirm the district court's judgment.

---

included in Luminex's original fee request of $130,000 but not its alternative request of $107,400, which the district court ultimately awarded.

_____

                    Edward Smith, Justice

Before Chief Justice Byrne, Justices Baker and Smith

Affirmed

Filed:   March 17, 2022