# IN THE SUPREME COURT OF TEXAS

═══════════════

NO. 18-0186

═══════════════

PATHFINDER OIL & GAS, INC. AND CATHLIND ENERGY, LLC, PETITIONERS,

V.

GREAT WESTERN DRILLING, LTD., RESPONDENT

═══════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE ELEVENTH DISTRICT OF TEXAS

═══════════════════════════════════

**Argued February 21, 2019**

JUSTICE GUZMAN delivered the opinion of the Court.

Pathfinder Oil & Gas, Inc. claims a 25% working interest in certain Permian Basin mineral leases under a letter agreement Great Western Drilling Ltd. contends is unenforceable. On the eve of trial, the parties stipulated that "only" certain issues would be submitted to the jury and that favorable jury findings would "entitle[]" Pathfinder to specific performance in lieu of money damages. Tracking the stipulations, the jury charge included only the specifically enumerated jury issues, which the jury answered in Pathfinder's favor. The trial court rendered judgment awarding specific performance as provided by the parties' agreement, but the court of appeals reversed, retracted the agreed remedy, and rendered a take-nothing judgment.[1] Though the elements of the agreed remedy were not among the issues reserved for the jury's determination, the appeals court

---

[1] 568 S.W.3d 148, 156 (Tex. App.—Eastland 2017).

held that specific performance was unavailable without a jury finding that Pathfinder was "ready, willing, and able" to perform its obligations under the disputed contract.[2]

We reverse the court of appeals' judgment. By stipulating as to the "only" issues the jury would have to determine to "entitle[]" Pathfinder to specific performance, the parties eliminated any dispute about whether Pathfinder was "ready, willing, and able to perform."

## I. Background

In a June 1, 2004 letter (the Letter Agreement), Great Western offered Pathfinder "the right to participate" in the acquisition of specified mineral leases if Pathfinder elected to participate "by checking the appropriate blank [in the Letter Agreement] [and] signing, dating and returning a copy of th[e] letter to Great Western within forty-eight (48) hours . . . ." The Letter Agreement included basic terms for participating in the deal, but further stated that Great Western would "work on the details of a participation agreement for [the] acreage as soon as reasonably possible." Pathfinder elected to participate in the lease acquisition and timely returned a signed and dated copy to Great Western.

After sparring with Pathfinder over various details in the proposed participation agreement, Great Western withdrew the purchase offer in a faxed letter. Within hours, Pathfinder signed the draft participation agreement and mailed it to Great Western along with a required payment.

Great Western sued for a declaration that the Letter Agreement was not an enforceable contract, and Pathfinder counterclaimed for breach of contract. The day before trial, the parties agreed to a four-paragraph stipulation that expressly (1) limited the issues to be submitted to the jury; (2) limited Pathfinder's remedy to specific performance and specified the conditions for

---

[2] *Id.*

2

obtaining that remedy; (3) waived Pathfinder's claim for money damages; and (4) required Pathfinder to nonsuit specific claims. In pertinent part, the stipulation agreement provides:

> 1. At the trial of this cause . . . , the only issues that will be submitted to the Court and/or jury will be (a) whether the June 1, 2004 Letter Agreement . . . is an enforceable agreement; (b) whether Great Western or Pathfinder breached the Letter Agreement; and (c) Great Western's affirmative defenses of estoppel, failure of consideration, statute of frauds, mutual mistake, anticipatory repudiation, unclean hands, material breach and revocation.
>
> . . . .
>
> 3. In the event that the Court or jury finds that [1] the Letter Agreement is an enforceable agreement, [2] Great Western breached the Letter Agreement, and [3] Pathfinder is entitled to recover for Great Western's breach, the following will control the relief awarded to Pathfinder:
>
>> a. Pathfinder will be entitled to the remedy of specific performance, requiring Great Western to convey to Pathfinder an undivided 25% of the oil and gas leases . . . ; [and]
>>
>> b. Pathfinder hereby elects the remedy of specific performance and waives its claim [for] money damages . . . .

At the close of evidence, the trial court instructed the jury in accordance with the written stipulations by submitting five questions pertaining to the three matters delineated in Paragraph 1—contract formation, breach, and affirmative defenses. Question No. 1 inquired whether the June 1, 2004 letter was an agreement to convey a 25% working interest to Pathfinder. Questions No. 2 and No. 3 inquired, respectively, whether Pathfinder and Great Western breached the contract. If both parties breached, Question No. 4 asked who breached first. And if Great Western was the first to breach, Question No. 5 submitted Great Western's anticipatory-repudiation defense.

3

At the charge conference, the court denied Great Western's proposed jury question asking whether Pathfinder had, at all times, been "ready, willing, and able to perform the essence of its obligations"—an element of specific performance that is a fact issue when contested.[3] In denying the request, the court explained that the parties' stipulations specified the only findings required and obviated the need for the requested finding.

The jury answered the first three questions in Pathfinder's favor and did not reach questions four and five, which were conditionally submitted.

Based on the jury's findings, the trial court rendered judgment for Pathfinder and ordered specific performance in accordance with the relief outlined in Paragraph 3 of the stipulations. Citing Great Western's agreement to "provide a simple calculation of the revenue and expenses" up to the most recent accounting period and "forward the representative proceeds in the amount representing Pathfinder's twenty-five (25%) interest for all historical production,"[4] the court ordered Great Western to pay $3.05 million as net revenue on Pathfinder's working interest plus pre-judgment interest of $729,252.90. The court also awarded Pathfinder more than $200,000 in attorney's fees. In a written opinion issued along with the judgment, the court reiterated its understanding of the stipulations, including the required jury findings and the agreed relief.[5]

Great Western raised three issues on appeal: (1) the Letter Agreement is not an enforceable contract; (2) the trial court's specific-performance order was improper because Pathfinder failed to establish that it was ready, willing, and able to fulfill its contractual obligations; and (3) the trial

---

[3] *DiGiuseppe v. Lawler*, 269 S.W.3d 588, 593 (Tex. 2008).

[4] Paragraph 3 included six subparagraphs detailing how the agreed remedy would be effectuated. Among other provisions, Great Western agreed to provide an accounting and pay Pathfinder its share of past proceeds.

[5] Despite Great Western's timely reminder, the trial court did not rule on its motion for judgment notwithstanding the verdict. Great Western's motion for new trial was overruled by operation of law.

court improperly awarded damages and prejudgment interest contrary to the parties' stipulations and without supporting evidence.[6] The court of appeals found the second issue to be dispositive and thus did not reach the first and third.[7]

Notwithstanding the stipulations in Paragraph 1 expressly limiting the issues to be submitted to the jury, the court construed Paragraph 3 as further requiring Pathfinder to establish that "it was entitled to relief as a result of the breach, which encompasses not only a causation element but also the element that it was ready, willing, and able to perform its contractual obligations."[8] Noting Paragraph 3 conditions specific performance on a finding that "Pathfinder is *entitled to recover for Great Western's breach*," the court reasoned that the stipulations limited the remedy to specific performance but "did not obviate the necessity that Pathfinder prove its entitlement to it."[9] Because Pathfinder failed to conclusively establish or obtain a jury finding that it was ready, willing, and able to perform, the court rendered judgment for Great Western.[10]

We granted Pathfinder's petition for review, which presents several issues in addition to the proper construction of the stipulation agreement. But because the contract-construction issue is dispositive of the appeal, we do not reach the others and, instead, remand to the court of appeals to consider the unaddressed issues.

---

[6] 568 S.W.3d 148, 152 (Tex. App.—Eastland 2017).

[7] *Id.*

[8] *Id.* at 154.

[9] *Id.*

[10] *Id.* at 155-56.

5

## II. Discussion

Specific performance is an equitable remedy that may be awarded for breach of contract.[11] Although the expediency, necessity, and propriety of equitable relief is a matter for the court, a jury may be required to resolve disputed issues when material facts are contested.[12] Parties can, however, waive their right to proof of a fact[13] or an element of a claim[14] through a written stipulation or one made in open court.[15] When parties stipulate that only certain questions will be tried, all others are thereby waived.[16] Stipulations are binding on the parties, so the duty to enforce valid pretrial stipulations is purely ministerial.[17]

---

[11] *DiGiuseppe v. Lawler*, 269 S.W.3d 588, 593 (Tex. 2008).

[12] *Id.* at 596.

[13] *Mendoza v. Fid. & Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex. 1980).

[14] *E.g.*, *Perry v. Brooks*, 808 S.W.2d 227, 229 (Tex. App.—Houston [14th Dist.] 1991, no pet.) ("[S]tipulations . . . eliminate an adversary's necessity of proof and establish the admitted elements as a matter of law." (emphasis removed)); *see City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex. 1979) (recognizing that Tex. R. Civ. P. 11 permits parties to "narrow the issues presented to the trial court"); *see also infra* note 16 and accompanying text.

[15] TEX. R. CIV. P. 11.

[16] *E.g.*, *Clear Creek*, 589 S.W.2d at 677 ("The trial court's judgment reflects that the parties by agreement expressly presented only one issue to the court, and the requirements of rule 11 were met when the agreement was reflected in the judgment."); *Cushnig v. Smith*, 12 S.W. 19, 19-20 (Tex. 1889) (enforcing a trial stipulation that "'the real and only issue is one of boundary and identification of plaintiff's and defendant's real estate"); *Peal v. Luling Oil & Gas Co.*, 137 S.W.2d 848, 851 (Tex. App.—San Antonio 1940, writ dism'd judgm't cor.) (stipulation as to the "only" matter in dispute "eliminate[d] any question of recission"); *see, e.g.*, *Esch v. Forster*, 168 So. 229, 231 (Fla. 1936) ("Where parties by stipulation prescribe the issues on which the case is to be tried, . . . [the stipulation] amounts to a binding waiver and elimination of all issues not included."); *Manhattan Bible Coll. v. Stritesky*, 387 P.2d 225, 228 (Kan. 1963) ("A stipulation that only one issue, or only particular issues, are involved authorizes entry of judgment for the one party [sic] or the other as the stipulated fact or issue is decided. Where parties by stipulation prescribe the issues on which the case is to be tried, . . . a stipulation of this nature, unlike a stipulation which merely eliminates a single issue, amounts to a binding waiver or elimination of all issues not included." (citations omitted)).

[17] *Shamrock Psychiatric Clinic, P.A. v. Tex. Dep't of Health & Human Servs.*, 540 S.W.3d 553, 560 (Tex. 2018)*; Fortis Benefits v. Cantu*, 234 S.W.3d 642, 651 (Tex. 2007).

6

As we,[18] our courts of appeals,[19] and other state high courts[20] have repeatedly held, stipulations are "contracts relating to litigation, and thus we construe them under the same rules as a contract."[21] The straightforward contract-interpretation question presented here is whether the parties' pretrial stipulations waived or eliminated Pathfinder's burden of proving its entitlement to specific performance.

## A. Standards of Review

Our "primary objective" in construing contracts is to give effect to the written expression of the parties' intent.[22] As we have often said, in one way or another, "[a] contract's plain language controls, not what one side or the other alleges they intended to say but did not."[23] We therefore look to "[o]bjective manifestations of intent" and, in doing so, we must "'presume parties intend

---

[18] *E.g.*, *In re Ford Motor Co.*, 211 S.W.3d 295, 298 (Tex. 2006) (orig. proceeding) ("A stipulation provision, however, like any contract provision, . . . must be considered with reference to the whole."); *Shepherd v. Ledford*, 962 S.W.2d 28, 33 (Tex. 1998) (a stipulation is "an agreement, admission, or concession made in a judicial proceeding by the parties or their attorneys respecting some matter incident thereto" (internal quotation marks omitted)).

[19] *E.g.*, *Hous. Laureate Assocs., Ltd. v. Russell*, 504 S.W.3d 550, 566 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("We review stipulations among parties in the same way as other contracts.").

[20] *E.g.*, *Straub v. Smith*, 175 P.3d 754, 758 (Idaho 2007) ("A stipulation is a contract, and we will apply contractual principles of interpretation when reviewing a stipulation."); *Lillard Pipe & Supply, Inc. v. Bailey*, 387 P.2d 118, 122 (Okla. 1963) ("Although stipulations are unlike ordinary contracts in that no consideration or mutuality is required, they are to be construed like other contracts between parties."); *Banos v. Rhea*, 33 N.E.3d 471, 475 (N.Y. 2015) ("In general, a stipulation or consent judgment is a contract between parties and must be construed according to the rules of contract interpretation.").

[21] *Shamrock Psychiatric*, 540 S.W.3d at 560; *see, e.g.*, *D.M. Marine, Inc. v. Turner*, 409 S.W.3d 693, 700 (Tex. App.—Houston [1st Dist.] 2013, pet. denied); *Am. Bank of Waco v. Waco Airmotive, Inc.*, 818 S.W.2d 163, 178 (Tex. App.—Waco 1991, writ denied).

[22] *URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 763 (Tex. 2018); *Matagorda Cty. Hosp. Dist. v. Burwell*, 189 S.W.3d 738, 740 (Tex. 2006) ("In the usual case, the instrument alone will be deemed to express the intention of the parties for it is objective, not subjective, intent that controls.").

[23] *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017) (internal citations and quotation marks omitted); *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 127 (Tex. 2010) ("The parties' intent is governed by what they said in the insurance contract, not by what one side or the other alleges they intended to say but did not.").

what the words of their contract say' and interpret contract language according to its 'plain, ordinary, and generally accepted meaning' unless the instrument directs otherwise."[24]

Contract terms cannot be viewed in isolation, however, because doing so distorts meaning. Accordingly, we must "consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless."[25] Consistent with "our long-established precedent that '[n]o one phrase, sentence, or section [of a contract] should be isolated from its setting and considered apart from the other provisions,'" a specific contract provision controls over a general one.[26]

A written instrument that can be given a certain or definite legal meaning or interpretation is not ambiguous and will therefore be construed as matter of law.[27] "Whether a contract is ambiguous is [also] a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered."[28] But, while surrounding circumstances may inform the meaning of the words the parties chose to effect their accord even when a contract is unambiguous,[29] "courts may not rely on evidence of surrounding circumstances

---

[24] *URI*, 543 S.W.3d at 763-64 (quoting *Gilbert Tex. Constr.*, 327 S.W.3d at 126 and *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996), respectively); *Great Am. Ins.*, 512 S.W.3d at 893 ("'Plain meaning' is a watchword for contract interpretation because word choice evinces intent.").

[25] *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (emphasis omitted).

[26] *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133-34 (Tex. 1994) (alterations in original).

[27] *Coker*, 650 S.W.2d at 393.

[28] *Id.* at 394.

[29] We recently elaborated on the role surrounding facts and circumstances play in aiding contract interpretation. As explained in *URI, Inc. v. Kleberg County*:

> What "facts and circumstances" may be consulted will naturally vary from case to case, but reasonably well-defined contours can be mined from our jurisprudence. Because objective intent controls the inquiry, only circumstantial evidence that is objective in nature may be consulted. We have accordingly described surrounding circumstances as including "'the commercial or other setting in

8

to make the language say what it unambiguously does not say" or "to create an ambiguity."[30] Circumstantial evidence is merely "an aid in the construction of the contract's language" and may only be used to give the contract a meaning consistent with that to which its terms are reasonably susceptible.[31]

The disputed contract terms at issue in this case are part of a four-paragraph stipulation in which the parties agreed to the required jury issues, the abandoned claims, the remedy, and a reservation of rights. Paragraph 1 reduced the required jury submissions to "only" three matters. Paragraph 2 required Pathfinder to non-suit specific claims. Paragraph 3 detailed the relief Pathfinder would be "entitled to" if it prevailed on the specified issues (specific performance) and the relief it would abandon (money damages and a formal accounting). And Paragraph 4 preserved the parties' right to appeal. Construed according to its plain terms, Great Western and Pathfinder's

---

which the contract was negotiated and other objectively determinable factors that give a context to the transaction between the parties.'" Setting can be critical to understanding contract language, as we found in cases involving the lawyer-client relationship and construction of an arbitration agreement. We have also cited trade custom as bearing on the parties' objective intent when provisions were stricken from a form insurance contract. Similarly, trade usage can illuminate the meaning of contract language because "the meaning to which a certain term or phrase is most reasonably susceptible is the one which [is] so regularly observed in place, vocation, trade or industry so 'as to justify an expectation that it will be observed with respect to a particular agreement.'" Facts attending the execution may or may not shed light on contract meaning and may or may not cross the parol-evidence line. In deciding what facts and circumstances are informative, rather than transformative, ascertaining objective meaning is the touchstone.

543 S.W.3d at 767-68 (citations and emphasis omitted) (alterations in original).

[30] *Id*. at 765, 767 (quoting *First Bank v. Brumitt*, 519 S.W.3d 95, 110 (Tex. 2017)); *see id.* at 758 ("Surrounding facts and circumstances can inform the meaning of language but cannot be used to augment, alter, or contradict the terms of an unambiguous contract."); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 521 n.5 (Tex. 1995).

[31] *URI*, 543 S.W.3d at 765, 768 (quoting *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1981)); *see Anglo–Dutch Petrol. Int'l, Inc. v. Greenberg Peden, P.C.*, 352 S.W.3d 445, 451 (Tex. 2011) ("Understanding the context in which an agreement was made is essential in determining the parties' intent as expressed in the agreement, but it is the parties' expressed intent that the court must determine." (emphasis omitted)).

9

agreement unambiguously prescribed—or fixed—the issues on which the case was to be tried and therefore waived or eliminated issues that were excluded.

## B. The Agreed Jury Issues and Relief

Breach of contract requires pleading and proof that (1) a valid contract exists; (2) the plaintiff performed or tendered performance as contractually required; (3) the defendant breached the contract by failing to perform or tender performance as contractually required; and (4) the plaintiff sustained damages due to the breach.[32]  A party seeking the equitable remedy of specific performance in lieu of money damages may, in some circumstances, be excused from pleading and proving the second element, but must additionally plead and prove that, at all relevant times, it was ready, willing, and able to perform under the contract.[33]  Contested fact issues, including prerequisites to obtaining equitable relief, are for the jury to resolve, and the burden of proof is on the party seeking a remedy.[34]

Here, however, the parties agreed that the jury would "only" determine three matters—existence of a valid contract, breach, and any affirmative defenses to recovery.  The language in Paragraph 1 is plain and clear: the jury would only be charged with deciding the specified issues, nothing more.  And after prevailing on those issues, Paragraph 3 plainly provides that Pathfinder "will be entitled to" specific performance:

> In the event that the Court or jury finds that [1] the Letter Agreement is an enforceable agreement, [2] Great Western breached the Letter Agreement, and

---

[32] *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018).

[33] *DiGiuseppe v. Lawler*, 269 S.W.3d 588, 593-94, 601 (Tex. 2008) (proof of compliance with the contract including tender of performance is required unless compliance or tender is excused by the defendant's breach or repudiation).

[34] *Id.* at 596.

10

[3] Pathfinder is entitled to recover for Great Western's breach, . . . Pathfinder will be entitled to the remedy of specific performance . . . .

Great Western agreed: if A, then B. Pathfinder satisfied A, so B necessarily follows.

Notwithstanding Paragraph 1's clear and express language, Great Western presents Paragraph 3 as something of a Trojan horse bearing a fourth issue Pathfinder was required to submit to the jury. It asserts Paragraph 3's use of the phrase "entitled to recover" required Pathfinder to prove it was entitled to specific performance, including that it was at all times "ready, willing, and able to perform." But Great Western's construction of the stipulations lacks fidelity to the express contract language in several respects.

First, Paragraph 3 requires Pathfinder to prove it is "entitled to recover for Great Western's breach," not that it is "entitled to specific performance." In accordance with the parties' express stipulations, if Pathfinder established a right to recover, specific performance is the agreed remedy.

Second, Great Western's argument requires reading Paragraph 3's "entitled to recover" language divorced from the context provided in Paragraph 1. But contract terms cannot be read in isolation. The phrase "only issues" in Paragraph 1 is clear, specific, and unequivocal, so it would take something equally clear elsewhere in the stipulation agreement to add an issue to the dispute. While "entitled to recover" may lack clarity on its own, the specific provision in Paragraph 1 affords the general phrase a meaning consistent with which it is reasonably susceptible.

When the two paragraphs are aligned with each other, their parallel construction shows that "entitled to recover" in Paragraph 3 is shorthand for the 22-word affirmative-defense clause in Paragraph 1:

11

| Paragraph 1 | Paragraph 3 |
|---|---|
| [T]he only issues that will be submitted to the Court and/or jury will be | In the event that the Court or jury finds that |
| (a) whether the June 1, 2004 Letter Agreement between [Great Western] and [Pathfinder] (the "Letter Agreement") is an **enforceable agreement** | [1] the Letter Agreement is an **enforceable agreement**, |
| (b) whether Great Western or Pathfinder **breached** the Letter Agreement; and | [2] that Great Western **breached** the Letter Agreement, and |
| (c) Great Western's **affirmative defenses of** estoppel, failure of consideration, statute of frauds, mutual mistake, anticipatory repudiation, unclean hands, material breach and revocation. | [3] that Pathfinder is **entitled to recover** for Great Western's breach, |
|  | Pathfinder will be entitled to the remedy of specific performance . . . . |

When construed in context, "entitled to recover for Great Western's breach" refers to Pathfinder prevailing on Great Western's affirmative defenses, which otherwise would bar recovery even if the other two conditions stated in Paragraph 3—contract and breach—are satisfied.[35] It is therefore consistent with, and adds nothing to, Paragraph 1's limitations on the disputed fact issues.

Third, if, as Great Western would have it, the "entitled to recover for Great Western's breach" language required Pathfinder to satisfy every element of breach of contract *and* specific performance *and* give up other claims and remedies, Paragraph 1 and the stipulation agreement as a whole would be largely pointless. But the stipulations objectively manifest the parties' intent to narrow the scope of the dispute and the presentation of the case on the merits. Comparing and

---

[35] An affirmative defense defeats recovery on a claim even if the plaintiff's allegations are true. *See Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 155-56 (Tex. 2015); *Affirmative Defense*, BLACK'S LAW DICTIONARY at 451 (10th ed. 2004).

harmonizing Paragraphs 1 and 3 reveals that the only reasonable construction of the stipulation agreement is that Pathfinder was required to submit and prevail on only those issues Paragraph 1 reserved for the jury's determination.

We also disagree with Great Western's suggestion that we gave special—and controlling—meaning to the phrase "entitled to" in *DiGiuseppe v. Lawler*. In *DiGiuseppe*, the parties signed a land sale contract, which provided that "If Seller defaults . . . , Purchaser may, at its option, either (i) terminate this Contract and receive a full and immediate refund of the Earnest Money previously deposited, or (ii) seek to enforce specific performance of this Contract."[36] The purchaser sued, and a jury found in his favor. "*Although disputed at trial*, no question was . . . submitted to the jury with respect to specific performance."[37] The trial court nonetheless awarded specific performance.[38] We held that specific performance was not available because the matter was disputed and the purchaser failed to obtain a jury finding, or conclusively establish, that it was "ready, willing, and able to perform."[39]

Rejecting the purchaser's argument to the contrary, we explained that the remedy provision in the land sale contract did not "in any way alter the requirements for obtaining specific performance in the event [the Purchaser] decide[d] to seek such a remedy."[40] Rather, "the provision plainly grant[ed] [the Purchaser] only the right to 'seek to enforce' specific performance, leaving

---

[36] Petition for Review App. at 4, *DiGiuseppe v. Lawler*, 269 S.W.3d 588 (Tex. 2008) (04-0641).

[37] *DiGiuseppe*, 269 S.W.3d at 592 (emphasis added).

[38] *Id.*

[39] *Id.* at 598.

[40] *Id.* at 597-98.

13

open the possibility that he may seek to enforce it, but be unable to do so."[41]  Because the Seller "did not concede or stipulate in the trial court that [the Purchaser] was ready, willing, and able to perform," the Purchaser still had to prove it.[42]

Great Western's stipulations, though, are different precisely in the way we anticipated in *DiGiuseppe*.  By expressly prescribing the issues on which the case was to be tried, the stipulations here waived the need to prove all other issues: damages and "ready, willing, and able."[43]  Unlike *DiGiuseppe*, the stipulations eliminated any fact dispute bearing on the agreed remedy's availability.  The stipulations also provided a single remedy "Pathfinder will be entitled to" in exchange for dropping other remedies, not a choice of remedies it might "seek" as in *DiGiuseppe*.  Thus, comparing Great Western and Pathfinder's stipulations to the contract in *DiGiuseppe* only further confirms that Great Western waived its right to require Pathfinder to prove the ready, willing, and able element of the agreed remedy.

Great Western's final argument is that Pathfinder's opening statement to the jury the day after it signed the stipulations shows it too understood the stipulations had not relieved Pathfinder of its obligation to prove ready, willing, and able.  We do not view the opening statement in the same way Great Western does.  But even if we did, "[a] contract's plain language controls, not what one side or the other alleges they intended to say but did not."[44]  The parties' stipulations are

---

[41] *Id.* at 598.

[42] *Id.* at 596.

[43] *See supra* note 16 and accompanying text.

[44] *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017) (internal citations and quotation marks omitted).

14

unequivocal, and a contrary interpretation would require disregarding language specifically delineating the "only" issues reserved for the jury's determination.

### III. Conclusion

By agreeing to limit the jury submissions to contract formation, breach, and specific affirmative defenses, Great Western waived the right to insist on any other fact findings that might otherwise have been required to entitle Pathfinder to specific performance. We therefore reverse the court of appeals' judgment and remand to that court to consider the unaddressed appellate issues.

_____
Eva M. Guzman
Justice

**OPINION DELIVERED:** May 24, 2019

15