

# NUMBER 13-23-00072-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

TEXAS CRUDE ENERGY, LLC,                                         **Appellant,**

**v.**

BURLINGTON RESOURCES OIL
& GAS COMPANY, LP,                                         **Appellee.**

## ON APPEAL FROM THE 156TH DISTRICT COURT
## OF LIVE OAK COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Justices Longoria, Silva, and Peña[1]**
**Memorandum Opinion by Justice Peña**

---

[1] The Honorable Nora L. Longoria, former Justice of this Court, did not participate in this decision because her term of office expired on December 31, 2024.

Appellant Texas Crude Energy, LLC (Texas Crude) appeals the trial court's summary judgment in favor of appellee Burlington Resources Oil & Gas Company, LP (Burlington) on Texas Crude's actions for breach of contract and declaratory judgment. In two issues, Texas Crude argues the trial court erred in (1) denying its motion for partial summary judgment and granting Burlington's motions for summary judgment; and (2) dismissing one of Texas Crude's requested declarations as well as its claim for attorney's fees where Burlington did not seek summary judgment on those claims. We reverse and render in part and reverse and remand in part.

## I.   BACKGROUND[2]

The parties are oil and gas companies that offer competing interpretations of a joint operating agreement ("JOA") for oil and gas production in the Sugarloaf Prospect Area in Live Oak, Bee, and Karnes Counties. In 2005, Texas Crude and Burlington entered into a prospect development agreement whereby each party would receive a portion of the other party's working interest in the Sugarloaf Prospect. Ownership of the operation was allocated as follows: 87.5% to Burlington and 12.5% to Texas Crude. Burlington and Texas Crude signed a JOA modeled after the form agreement published by the American Association of Petroleum Landmen in 1982. The JOA designated Burlington as the operator for the area. In 2014, Warwick-Athena, LLC (Warwick)[3] acquired a 10% working interest from Texas Crude, becoming a party to the JOA and reducing Texas Crude's interest to 2.5%.

**A.   The JOA**

---

[2] We derive the factual background from the summary judgment record. The facts are undisputed, unless indicated otherwise.

[3] For reasons stated later in this opinion, Warwick is not a party to this appeal.

2

Relevant to the operator's duties, Article V.A. of the JOA provides:

Burlington shall be the Operator of the Contract Area, and shall conduct and direct and have full control of all operations on the Contract Area as permitted and required by, and within the limits of this agreement. It shall conduct all such operations in a good and workmanlike manner, but it shall have no liability as Operator to the other parties for losses sustained or liabilities incurred, except such as may result from gross negligence or willful misconduct.

Article V.B.1. provides that an operator may be removed "if it fails or refuses to carry out its duties . . . by the affirmative vote of two (2) or more Non-Operators owning a majority interest . . . remaining after excluding the voting interest of Operator."

According to Article VI.B.1 of the JOA, each party possessed the right to propose the drilling of new wells:

Should any party hereto desire to drill any well on the Contract Area . . ., the party desiring to drill . . . such a well shall give the other parties written notice of the proposed operation, specifying the work to be performed, the location, proposed depth, objective formation and the estimated cost of the operation.

The parties receiving such a notice shall have thirty (30) days after receipt of the notice within which to notify the party wishing to do the work whether they elect to participate in the cost of the proposed operation.

Article VI.B.1 discusses the operator's duty should all parties agree to a proposal:

If all parties elect to participate in such a proposed operation, Operator shall, within ninety (90) days after expiration of the notice period of thirty (30) days . . . actually commence the proposed operation and complete it with due diligence at the risk and expense of all parties thereto provided however, said commencement date may be extended upon written notice of same by Operator to the other parties, for a period of up to thirty (30) additional days if, in the sole opinion of Operator, such additional time is reasonably necessary to obtain permits from governmental authorities, surface rights (including rights-of-way) or appropriate drilling equipment, or to complete title examination or curative matter[s] required for title approval or acceptance.

3

The Article further addresses situations when a proposed operation is not timely commenced:

> Notwithstanding the force majeure provisions of Article XI, if the actual operation has not been commenced within the time provided . . . and if any party hereto still desires to conduct said operation, written notice proposing same must be resubmitted to the other parties in accordance with the provisions hereof as if no prior proposal had been made.

According to Article VI.B.2, if one or more parties elect not to participate in the proposed well, the proposing party must advise the consenting parties of whether it recommends that they proceed with the proposed well. The consenting parties then have the option to assume a portion of the non-consenting parties' share of the proposed well, after which the proposing party "may withdraw such proposal if there is insufficient participation." If the operation commences, the consenting parties "shall own and be entitled to receive, in proportion to their respective interests, all of such [n]on-[c]onsenting [p]arty's working interest in the well and share of production therefrom."

## B. Proposed Operations

In April 2018, Warwick proposed the drilling of five wells on the prospect. Between August and October of 2018, Warwick proposed the drilling of 24 wells. Burlington and Texas Crude elected to participate in each of the proposed wells. In late 2021, Warwick proposed an additional fifteen wells, in which Burlington and Texas Crude elected to participate. Nevertheless, shortly before the expiration of each ninety-day deadline to commence operations, Burlington, in its capacity as operator, notified Texas Crude and Warwick that it would not be drilling the wells because it would be imprudent to do so.[4]

---

[4] Burlington presented evidence regarding its process for evaluating whether the proposals were prudent. The record provides that Burlington identified several defects with the proposed operations which it declined to undertake.

## C. Litigation

On March 4, 2019, Warwick and Texas Crude sued Burlington for breach of contract and declaratory judgment. They alleged Burlington breached the JOA by "failing and refusing to commence and complete with due diligence operations" to which all parties had consented. They sought the following declaratory relief: (1) the JOA requires Burlington to actually commence an operation within ninety days after the expiration of the thirty-day election period, subject only to the JOA's thirty-day extension and force majeure provisions; (2) Burlington's refusal to commence operations is a breach of the JOA; (3) other provisions in the JOA are inapplicable to and do not excuse Burlington's breach; and (4) Burlington's failure to commence operations subjects Burlington to removal as operator following a vote by the non-operators. Warwick and Texas Crude sought damages for the breach of contract action, "including but not limited to the value of [their] working interests in each of the wells and the estimated production derived therefrom had the wells been timely commenced and completed as required" as well as attorney's fees for its declaratory judgment action.

After Burlington filed an answer, the parties filed cross-motions for partial summary judgment regarding interpretation of the contract. Texas Crude and Warwick moved for summary judgment on the following claims for declaratory relief: (1) Article VI.B.1 requires Burlington to timely commence operations on proposed wells in which all parties have elected to participate; (2) the resubmittal sentence of that article does not excuse Burlington's failure to do so and does not provide a remedy for such failure; and (3) the exculpatory language of Article V.A. does not apply to Burlington's obligations under Article VI.B.1. Texas Crude and Warwick provided the following evidence in support of

5

their motion: (1) deposition excerpts; (2) Burlington's elections to participate in well proposals and later refusals to commence drilling; and (3) the JOA.

Burlington's motion sought summary judgment on Warwick and Texas Crude's declaratory judgment action, arguing the following interpretation of the JOA: (1) it was not required to drill wells that a reasonably prudent operator would not drill under Article V.A.; and (2) if Burlington has not timely commenced a drilling operation to which all parties have agreed, any party still desiring to conduct the operation must resubmit the proposal under Article VI.B.1. Burlington supported its motion with deposition and declaration testimony, as well as the JOA.

After the parties filed responses, and replies thereto, to the competing motions, the trial court issued two orders. In its order on Texas Crude and Warwick's motion for partial summary judgment, the trial court ruled that "[t]he Contract Construction ruling sought by Plaintiffs is denied." The trial court issued another order on Burlington's motion for partial summary judgment. While it did not expressly grant the motion, the trial court concluded that the JOA does not require Burlington to conduct operations in the contract area in any manner other than a good workmanlike manner and that "resubmittal" is the only recourse for a party that wishes to proceed with a proposed drilling operation that has not been timely commenced.

Burlington subsequently acquired Warwick, and non-suited Warwick's claims. Burlington then filed a second motion for summary judgment seeking judgment on all of Texas Crude's claims, arguing the following interpretations of the JOA: (1) under Article VI.B.1., a party must resubmit a notice proposing an operation if the party still desires to conduct the operation in which all parties have elected to participate but was not timely

6

commenced by the operator; and (2) Texas Crude's claims fail as a matter of law because it did not resubmit the proposed operations. Burlington supported its motion with deposition experts, discovery responses, and the JOA.

The trial court granted Burlington's second motion for summary judgment and ruled that the JOA requires the operator to commence a proposed operation to which all parties have elected to participate within the stated deadline but that the resubmittal process gives direction to any party that wishes to proceed with a proposed operation that has not been timely commenced. The trial court concluded that an operator's failure to timely commence a proposed operation is not a breach of the JOA. The trial court also ruled that Article V.A. of the JOA applies to "all operations." The order stated that it was final and appealable and disposes of all matters and controversies. Texas Crude now appeals the trial court's summary judgment rulings. *See Tex. Dep't of Transp. v. Flores*, 513 S.W.3d 826, 827 (Tex. App.—El Paso 2017, no pet.) ("[I]nterlocutory orders entered by the court are merged into the final judgment.").

## II.     STANDARD OF REVIEW & APPLICABLE LAW

We review the trial court's ruling on a summary judgment motion de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A party moving for traditional summary judgment bears the burden of proving that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). A plaintiff movant must conclusively prove all essential elements of its cause of action as a matter of law. *Draughon v. Johnson*, 631 S.W.3d 81, 87 (Tex. 2021). Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). A defendant movant must conclusively negate at least one

7

essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Raynor v. Moores Mach. Shop, LLC*, 359 S.W.3d 905, 907 (Tex. App.—Houston [14th Dist.] 2012, no pet.). If the movant meets its burden, then the burden shifts to the non-movant "to present to the trial court any issues or evidence that would preclude summary judgment." *Duncan v. Hindy*, 590 S.W.3d 713, 719 (Tex. App.—Eastland 2019, pet. denied) (citing *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979)).

When reviewing a summary judgment, we take as true all evidence favorable to the non-movant, indulging every reasonable inference and resolving any doubts in the non-movant's favor. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). "When the controversy can be resolved by proper construction of an unambiguous document, rendition of summary judgment is appropriate." *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 681 (Tex. 2017) (citing *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 862 (Tex. 2000)).

"When both parties move for summary judgment and the trial court grants one motion and denies the other, . . . we determine all issues presented and render the judgment that the trial court should have rendered. *Colorado County v. Staff*, 510 S.W.3d 435, 444 (Tex. 2017) (citing *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013)). "However, if resolution of the issues rests on disputed facts, summary judgment is inappropriate, and the reviewing court should reverse and remand for further proceedings." *Rancho Viejo Cattle Co., Ltd. v. ANB Cattle Co.*, 642 S.W.3d 850, 870 (Tex. App.—San Antonio 2021, pet. denied) (quoting *Gramercy Ins. Co. v. MRD Invs., Inc.*, 47 S.W.3d 721, 724 (Tex. App.—Houston [14th Dist.] 2001, pet. denied)).

"JOAs are 'contract[s] typical to the oil and gas industry whose function is to designate an 'operator, describe the scope of the operator's authority, provide for the allocation of costs and production among the parties to the agreement, and provide for recourse among the parties if one or more default in their obligations.'" *Tawes v. Barnes*, 340 S.W.3d 419, 426 (Tex. 2011) (quoting *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 344 n.1 (Tex. 2006)). Any "person interested" under a written contract "may have determined any question of construction or validity" arising under that contract and "obtain a declaration of rights, status, or other legal relations thereunder." TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a); *see Trinity Universal Ins. Co. v. Sweatt*, 978 S.W.2d 267, 271 (Tex. App.—Fort Worth 1998, no. pet.) ("Construction and validity of contracts are the most obvious and common uses of the declaratory judgment action.").

Generally, a plaintiff asserting a breach-of-contract claim must prove (1) the existence of a valid contract, (2) the plaintiff performed or tendered performance as the contract required, (3) the defendant breached the contract by failing to perform or tender performance as the contract required, and (4) the plaintiff sustained damages as a result of the breach. *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019). "Absent ambiguity, contracts are construed as a matter of law." *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 305 (Tex. 2015) (citing *Moayedi v. Interstate 35/Chisam Rd., L.P.*, 438 S.W.3d 1, 7 (Tex. 2014)). "[O]ur task is to determine and enforce the parties' intent as expressed within the four corners of the written agreement." *Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 743 (Tex. 2020) (citing *Perryman v. Spartan Tex. Six Capital Partners, Ltd.*, 546 S.W.3d 110, 117–18 (Tex. 2018)). A contract's plain language controls, "not what one side or the other alleges they

9

intended to say but did not." *Pathfinder Oil & Gas*, 574 S.W.3d at 888 (quoting *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017)). Thus, we interpret contract language according to its plain, ordinary, and generally accepted meaning unless the instrument directs otherwise. *Id*. (citing *URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 763–64 (Tex. 2018)). And we must consider the entire writing in an effort to harmonize and give effect to all of the contract's provisions so that none will be rendered meaningless. *Id*. at 889 (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). Further, courts may not rely on evidence of surrounding circumstances to make the contract's language say what it unambiguously does not say or to create an ambiguity. *Id*. (citing *URI*, 543 S.W.3d at 765, 767). We may consider objectively determinable facts and circumstances that contextualize the parties' transaction and inform the meaning of the language used, but we may not use surrounding circumstances to alter or contradict an unambiguous contract's terms. *URI*, 543 S.W.3d at 758.

"As a rule, parties have the right to contract as they see fit as long as their agreement does not violate the law or public policy." *Coyote Lake Ranch, LLC v. City of Lubbock*, 498 S.W.3d 53, 59 (Tex. 2016) (quoting *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 129 (Tex. 2004)). This rule applies in the oil and gas context. *See id*. "We are not permitted to rewrite an agreement to mean something it did not." *Thedford Crossing L.P. v. Tyler Rose Nursery, Inc.*, 306 S.W.3d 860, 867 (Tex. App.—Tyler 2010, pet. denied) (citing *Birnbaum v. SWEPI LP*, 48 S.W.3d 254, 257 (Tex. App.—San Antonio 2001, pet. denied)). "We cannot change the contract simply because we or one of the parties comes to dislike its provisions or thinks that something else is needed in it." *Id.* (citing *Birnbaum*, 48 S.W.3d at 257). "Parties to a contract are masters of their own

10

choices and are entitled to select what terms and provisions to include in or omit from a contract." *Id.* (citing *Birnbaum*, 48 S.W.3d at 257).

### III. SCOPE OF OPERATOR DUTY

By its first issue, Texas Crude argues that the trial court erred in denying its motion for partial summary judgment and granting Burlington's motions for summary judgment because it did not interpret the JOA correctly. Specifically, Texas Crude argues that the JOA mandates that an operator commence an operation within the required time period when all parties have elected to participate. It further argues that an operator breaches the JOA by not timely commencing an operation whether or not a party resubmits its well proposal. Texas Crude further notes that the resubmittal provision is not applicable where a party does not seek to proceed with the drilling operations. Finally, it maintains that the JOA's prudent operator standard does not apply to the operator's obligation to timely commence operations.

Burlington responds that the JOA provides that the sole consequence for failing to drill a proposed well within the required time is that the operator loses the authority to incur drilling costs on behalf of the parties and that any party who wishes to still proceed with the operation must re-propose the well. Burlington further argues that the JOA's provision that an operator "shall conduct all such operations in a good and workmanlike manner" means it is not required to drill imprudent wells.

Here, neither party contends the JOA is ambiguous, nor do we find an ambiguity. Therefore, the JOA's interpretation is a question of law. *See, e.g., Seagull Energy*, 207 S.W.3d at 345 ("Neither the parties nor the lower courts have found this operating

11

agreement ambiguous, and we likewise agree that it is not. Its meaning is therefore a question of law.").

## A.   Duty to Timely Commence Operations

It is undisputed that all parties to the JOA elected to participate in several proposed operations, yet Burlington, as the operator, failed to actually commence the operations within the applicable time period. The trial court ruled that that an operator does not breach the JOA by failing to timely commence operations. To reiterate, VI.B.1 provides in relevant part:

> If all parties elect to participate in such a proposed operation, Operator *shall*, within ninety (90) days after expiration of the notice period of thirty (30) days . . . *actually commence* the proposed operation and complete it with due diligence at the risk and expense of all parties thereto, provided, however, said commencement date may be extended upon written notice of same by Operator to the other parties, for a period of up to thirty (30) additional days if, in the sole opinion of Operator, such additional time is reasonably necessary to obtain permits from governmental authorities, surface rights (including rights-of-way) or appropriate drilling equipment, or to complete title examination or curative matter[s] required for title approval or acceptance.

(Emphasis added). "Interpreting an agreement containing words such as 'may' and 'shall' requires us to determine whether the words are intended as permissive or mandatory." *Akhtar v. Leawood Hoa, Inc.*, 508 S.W.3d 758, 763 (Tex. App.—Houston [1st Dist.] 2016, no pet.). "Under well-settled Texas law, the common meaning of 'may' is permissive, while the common meaning of 'shall' is mandatory." *Id.* at 764 (first citing *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 525–26 (Tex. 2015); and then citing *Dall. Cty. Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 873–74 (Tex. 2005)).

Here, the JOA's use of the word "shall" imposes a mandatory, not a discretionary, duty to timely commence drilling for a proposal to which all parties consented under the

12

JOA. *See Dorsett*, 164 S.W.3d at 663 (construing similar language in a JOA and concluding that the JOA requires the operator to commence work no later than ninety days after formally proposing the operation to the interest owners but declining to address whether the operator was required to commence drilling or other preparatory work); *Valence Operating Co. v. Anadarko Petroleum Corp.*, 303 S.W.3d 435, 439 (Tex. App.—Texarkana 2010, no pet.) (noting that the JOA "mandated [the operator] to 'actually commence work' and . . . 'complete it with due diligence'").[5] However, we must consider this duty in harmony with the remainder of the JOA, specifically the exculpatory clause and resubmittal provision. *See Pathfinder Oil & Gas*, 574 S.W.3d at 889.

## B.    Exculpatory Clause

Article V.A., the exculpatory clause, provides:

> Burlington shall be the Operator of the Contract Area, and shall conduct and direct and have full control of all operations on the Contract Area as permitted and required by, and within the limits of this agreement. It shall conduct all such operations in a good and workmanlike manner, but it shall have no liability as Operator to the other parties for losses sustained or liabilities incurred, except such as may result from gross negligence or willful misconduct.

The phrase "good and workmanlike manner" as used in a JOA means that an operator owes a duty to perform as a reasonably prudent operator. *Johnston v. Am. Cometra, Inc.*,

---

[5] *See* TEX. GOV'T CODE ANN. § 311.016(1)–(3) (explaining that "may" creates discretionary authority or grants permission or a power, "shall" imposes a duty, and "must" creates or recognizes a condition precedent and that these constructions apply "unless the context in which the word or phrase appears necessarily requires a different construction or unless a different construction is expressly provided by statute"); *Iliff v. Iliff*, 339 S.W.3d 74, 81 (Tex. 2011) (stating that "the permissive word 'may' imports the exercise of discretion" in discussion of family law statute); *Dallas Cnty. Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 874 (Tex. 2005) (stating, in statutory-interpretation context, that "[t]he words 'may' and 'shall' mean different things, and . . . [t]he context in this case does not require an interpretation of the permissive word 'may' to mean something other than its plain meaning"); *Shall*, BLACK'S LAW DICTIONARY (11th ed. 2019) (stating that under the first of five definitions, "shall" means "[h]as a duty to; more broadly, is required to[;] . . . [t]his is the mandatory sense that drafters typically intend and that courts typically uphold"); *May*, BLACK'S LAW DICTIONARY (11th ed. 2019) (stating that under the first of three definitions, "may" means "[t]o be permitted to").

837 S.W.2d 711, 716 (Tex. App.—Austin 1992, writ denied) (citing *Westbrook v. Watts*, 268 S.W.2d 694, 697–98 (Tex. App.—Waco 1954, writ ref'd n.r.e.)). Burlington notes that this duty extends to all "operations" under the JOA. Therefore, it contends that the reasonably prudent operator standard applies to "decisions whether, when, and how to drill." As such, Burlington maintains that it cannot breach the JOA by failing to drill imprudent wells. Texas Crude maintains that the clause is inapplicable to Burlington's refusal to conduct proposed drilling operations.

"An exculpatory clause is a 'clause in a contract designed to relieve one party of liability to the other for specified injury or loss incurred in the performance of the contract.'" *Reeder v. Wood Cnty. Energy, LLC*, 395 S.W.3d 789, 792–93 (Tex. 2012) (quoting Howard Williams & Charles Meyers, Manual of Oil and Gas Terms 372, 373 (12th ed. 2003, updated and revised by Patrick Martin & Bruce Kramer)). Where an exculpatory clause in a JOA applies to "such operations" in the contract area, such as here, Texas courts have held that the clause does not pertain to a breach of contract allegation against an operator. *See, e.g., Castle Tex. Prod. Ltd. P'ship v. Long Trusts*, 134 S.W.3d 267, 283 (Tex. App.—Tyler 2003, pet. denied); *IP Petroleum Co., Inc. v. Wevanco Energy, L.L.C.*, 116 S.W.3d 888 (Tex. App.—Houston [1st Dist.] 2003, no pet.); *Cone v. Fagadau Energy Corp.*, 68 S.W.3d 147 (Tex. App.—Eastland 2001, pet. denied); *Abraxas Petroleum Corp. v. Hornburg*, 20 S.W.3d 741, 759 (Tex. App.—El Paso 2000, no pet.).

However, in *Reeder*, the Texas Supreme Court interpreted a similar JOA exculpatory clause which protected operators from "its activities," rather than "such operations." 395 S.W.3d at 794–95. The court held that "the use of the term 'its activities' includes actions under the JOA that are not limited to operations" and "implicates a

14

broader scope of conduct." *Id* at 795. Therefore, the court held that the exculpatory clause applied to a claim that the operator breached the JOA by "failing to maintain production in paying quantities" and failing to offer a well to a party prior to plugging the well, *id.* at 795 n.3, and that the plaintiff was required to show that the operator acted with gross negligence or willful misconduct. *Id.* at 796.

Later, the Fourteenth District Court of Appeals, in interpreting an identical exculpatory clause, declined to extend the reach of *Reeder* "so broad as to protect an operator from any breach of contract . . . , absent willfulness." *Bachtell Enterprises, LLC v. Ankor E&P Holdings Corp.*, 651 S.W.3d 514, 521 (Tex. App.—Houston [14th Dist.] 2022, pet. denied). Noting that exculpatory clauses protect the operator from liability for ordinary negligence, the court concluded that the clause did not apply to a breach of contract claim alleging that the operator was required to obtain consent for charges over $50,000 but failed to do so. *Id*. at 522.

Here, the exculpatory clause is limited to "such operations," similar to the clauses analyzed by the pre-*Reeder* cases, and Texas Crude's claims do not concern negligence, but willful activity. Therefore, we conclude that the exculpatory clause does not apply to allegations that Burlington failed or refused to perform a mandatory contractual duty. *See Castle*, 134 S.W.3d at 283; *Cone*, 68 S.W.3d at 155 ("The gross negligence/willful misconduct requirement applies to any and all claims that the operator failed to conduct operations in a good and workmanlike manner."). Further, Burlington's interpretation of the JOA would extend the application of the exculpatory clause to its decision of whether to proceed with *proposed* operations, rather than its actions following the commencement of operations. The clause does not include any term indicating such an application, and

15

we cannot add language to the JOA "under the guise of interpretation." *See XTO Energy Inc. v. Smith Prod. Inc.*, 282 S.W.3d 672, 680 (Tex. App.—Houston [14th Dist.] 2009, pet. dism'd). Accordingly, we hold that the trial court erred in interpreting the clause otherwise. *See Dorsett*, 164 S.W.3d at 661.

## C.     Harmonizing the Resubmittal Provision

Finally, we review the JOA's resubmittal provision and its relation to the operator's contractual duty to timely commence proposed drilling operations. *See Pathfinder Oil & Gas*, 574 S.W.3d at 889. The relevant portion of Article VI.B.1 provides:

> Notwithstanding the force majeure provisions of Article XI,[6] if the actual operation has not been commenced within the time provided . . . and if any party hereto still desires to conduct said operation, written notice proposing same must be resubmitted to the other parties in accordance with the provisions hereof as if no prior proposal had been made.

Burlington maintains that this provision is "the sole consequence of failing to drill a proposed well" within the applicable time period, noting, "It would be unreasonable for the [o]perator to wait indefinitely to begin drilling and still hold the non-[o]perators responsible for all the risk and expense of drilling." We disagree with Burlington in part.

---

[6] The use of the term "notwithstanding" evidences an intent to resolve any interpretation conflicts in favor of the provision containing the term. *See In re Lee*, 411 S.W.3d 445, 454 (Tex. 2013) (orig. proceeding) (construing the use of "notwithstanding" in a statute). As such, the resubmittal provision controls over any application of the JOA's force majeure provision. The force majeure provision provides as follows:

> If any party is rendered unable, wholly or in part, by force majeure to carry out its obligations under this agreement, other than the obligation to make money payments, that party shall give to all other parties prompt written notice of the force majeure with reasonably full particulars concerning it; thereupon, the obligations of the party giving the notice, so far as they are affected by the force majeure, shall be suspending during, but no longer than, the continuance of the force majeure. The affected party shall use all reasonable diligence to remove the force majeure situation as quickly as practicable.

We note that the JOA defines the term "force majeure" to include, among other things, "unavailability of equipment, and any other cause, whether of the kind specifically enumerated above or otherwise, which is not reasonably within the control of the party claiming suspension." Burlington does not argue that its failure to timely commence the proposed drilling operations was due to a force majeure event.

16

Considering the entire JOA in a manner that harmonizes and gives effect to all of its provisions, *see id.*, we conclude that the resubmittal provision, while requiring parties to resubmit drilling proposals that are not timely commenced, is not a remedy for an operator's breach of the JOA, nor does it excuse an operator from fulfilling its contractual duty to actually commence a well operation. The JOA contains no language to this effect. *See XTO Energy Inc.*, 282 S.W.3d at 680 ("This court must enforce the JOAs as written and cannot rewrite the agreements or add to their language under the guise of interpretation."). Rather, the provision concerns only how the parties should proceed if they still desire to participate in the proposed operations, regardless of the reason for the delay. Whether an operator has breached the JOA is unrelated to whether a party still desires to conduct the operation. Burlington's interpretation of the JOA would nullify the operator's mandatory duty. *See Pathfinder Oil & Gas*, 574 S.W.3d at 889 (explaining that we must consider the entire writing in an effort to harmonize and give effect to all of the contract's provisions so that none will be rendered meaningless).

Further, the JOA's resubmittal requirement does not eliminate a party's ability to pursue legal remedies for an operator's breach. In this case, Texas Crude has not sought to proceed with the proposed operations; instead, it seeks monetary damages. *See Yazdani-Beioky v. Sharifan*, 550 S.W.3d 808, 832 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) ("Specific performance and monetary damages are alternative remedies for breach of contract."). To the extent that the resubmittal provision can be considered a contractual remedy, it is not an exclusive remedy. "Remedies provided for in a contract may be permissive or exclusive." *GRCDallasHomes LLC v. Caldwell*, 619 S.W.3d 301, 306 (Tex. App.—Fort Worth 2021, pet. denied) (quoting *Vandergriff Chevrolet Co., Inc. v.*

17

*Forum Bank*, 613 S.W.2d 68, 70 (Tex. App.—Fort Worth 1981, no writ)). "The mere fact that the contract provides a party with a particular remedy does not, of course, necessarily mean that such remedy is exclusive." *Id.* (quoting *Forum Bank*, 613 S.W.2d at 70). "In the absence of such limiting terms or some other language which displaces the remedies that might otherwise be available, courts uniformly hold that a party may pursue any remedy that the law affords in addition to the remedies provided in the contract." *Id.* at 307 (collecting cases). "A construction which renders the specified remedy exclusive should not be made unless the intent of the parties that it be exclusive is clearly indicated or declared." *Vandergriff*, 613 S.W.2d at 70. Here, the JOA contains no such limiting terms indicating that the resubmittal provision is the exclusive remedy for an operator's failure to timely commence drilling operations.

Based on the foregoing, we hold that the trial court erred in concluding that that an operator cannot breach the JOA by failing to timely "actually commence" a proposed drilling operation. *See Dorsett*, 164 S.W.3d at 661.

**D.     Summary**

We conclude that the trial court erred in granting Burlington's motions for summary judgment on Texas Crude's declaratory judgment and breach of contract claims and in denying Texas Crude's partial motion for summary judgment seeking judgment on the following claims for declaratory relief:

> (1) The first sentence of the second paragraph of Article VI.B.1 requires the Operator to "actually commence" a proposed operation to which all parties have elected to participate, within the stated deadline;
>
> (2) The second sentence of the second paragraph of Article VI.B.1 does not negate or otherwise excuse an Operator's breach of its obligation to timely commence a proposed operation to which all

18

parties have elected to participate and does not provide a remedy (let alone a "sole" or "exclusive" remedy) for the Operator's refusal to commence operations to which all parties have agreed; and

(3) Neither the exculpatory clause in Article V.A, nor any performance standard in the clause, apply to Article VI.B.1's requirement that the Operator "actually commence" a proposed operation to which all parties have elected to participate, within the stated deadline.

Accordingly, we sustain Texas Crude's first issue.

## IV. REMOVAL OF OPERATOR AND ATTORNEY'S FEES CLAIMS

In its second issue, Texas Crude argues that the trial court erred in dismissing its declaratory judgment action regarding the removal of Burlington as operator as well as its claim for attorney's fees. Texas Crude maintains that Burlington did not move for summary judgment on these claims. Regarding attorney's fees, Texas Crude argues that the trial court had discretion to award attorney's fees even though it denied some of its requested declarations. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. Burlington responds that it explicitly sought summary judgment on all of Texas Crude's claims.

Given our reversal of the trial court's summary judgment dismissing all claims, we need not address the parties' contentions. *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal."). We further note that Texas Crude did not move for summary judgment on its requested declaration regarding removal of Burlington as operator or its request for attorney's fees. *See G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) ("Summary judgments, however, may

19

only be granted upon grounds expressly asserted in the summary judgment motion."). Therefore, we remand those claims to the trial court.

## V.    CONCLUSION

We reverse that portion of the trial court's judgment on Texas Crude's claim for declaratory relief and render judgment granting Texas Crude's motion for partial summary judgment. We reverse the remainder of the trial court's judgment on Texas Crude's breach-of-contract claim, request for declaratory relief concerning the removal of Burlington as operator, and request for attorney's fees, and we remand to the trial court for further proceedings consistent with this opinion.

L. ARON PEÑA JR.
Justice

Delivered and filed on the
30th day of January, 2025.

20